UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-80158-Civ-Dimitrouleas/Torres

JOSEPH AND PATRICIA MARRARI, On          CLASS ACTION
Behalf of Themselves and All Others Similarly
Situated,

Plaintiffs,

vs.

MEDICAL STAFFING NETWORK
HOLDINGS, INC., et al.,

Defendants.

_____/

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, PLAN OF ALLOCATION, AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES; AND INCORPORATED MEMORANDUM OF
LAW IN SUPPORT THEREOF**

Class Representative Thomas Greene ("Plaintiff") hereby moves this Court for an order

providing for: (1) final approval of the Settlement of this action; (ii) approval of the proposed Plan of

Allocation of the Settlement proceeds; and (iii) an award of attorneys' fees and reimbursement of

expenses. For the reasons set forth herein, in the Stipulation of Settlement filed on December 12,

2006 (the "Stipulation"), and in the Declaration of Stephen R. Astley in support of this motion, this

Court should find that the Settlement is fair, reasonable and adequate to the Class, and should be

approved.

## MEMORANDUM OF LAW

### I.    PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum of law, together with the accompanying Declaration of Stephen R. Astley (the "Astley Decl.") and exhibits attached thereto, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Preliminary Order dated December 13, 2006. This memorandum is submitted in support of the proposed Settlement of this action, the proposed Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses.

The Settlement, embodied in the Stipulation, creates a fund in the amount of $5 million in cash (with accrued interest, the "Gross Settlement Fund"). The Settlement is described in the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), which was mailed to all members of the Class who could be identified with reasonable effort in accordance with the Preliminary Order.

The Settlement is the result of almost three years of litigation which included, among other things: (i) a detailed investigation by Lead Counsel, including extensive interviews with former employees, and consultation with accountants and other experts; (ii) drafting a Consolidated Amended Class Action Complaint ("CAC") to comply with the rigorous pleading standards of the PSLRA; (iii) responding to Defendants' motion to Dismiss the CAC; (iv) completing discovery following the partial denial of Defendants' motion to dismiss; (v) briefing and arguing a motion for class certification; and (vi) engaging in settlement negotiations.

Based on the information analyzed to date in pursuing the claims of the Class, Lead Counsel has obtained sufficient information to recommend the Settlement to the Court as fair, adequate and reasonable. The Settlement avoids the possibility of the Class receiving nothing if Plaintiff was not

ultimately successful at trial, and provides the Class with a substantial and immediate recovery. The fairness of the Settlement is further evidenced by the fact that, as of January 12, 2007, 647 copies of the Notice were mailed to Class Members, and no Class Member has objected to the Settlement.[1] Moreover, at this time, no Class Member has requested exclusion from the Settlement. Plaintiff respectfully requests that this Court: (i) approve the Settlement, (ii) approve the Plan of Allocation, (iii) grant Lead Counsel's application for attorneys' fees and reimbursement of expenses, and (iv) enter the proposed Order and Final Judgment.

## II.    BACKGROUND OF THE LITIGATION AND SETTLEMENT

The history and details of this action are set forth in the accompanying Declaration of Stephen R. Astley in support of this motion. Those facts are summarized below.

### A.    Initial Complaints and Appointment of Lead Plaintiff and Lead Counsel

Beginning February 19, 2004, and on various dates thereafter, three federal securities class action complaints[2] were commenced on behalf of shareholders of Medical Staffing Network Holdings, Inc. ("MSN" or the "Company"), alleging violations of Section 11 and Section 15 of the Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the Securities

---

[1] Although there were no objections to the settlement, three individuals did opt-out of the Class following the receipt of notice of class certification.

[2] A fourth Class Action lawsuit was filed on March 29, 2004, in the Florida Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida styled *Haddon Zia v. Medical Staffing Network Holdings, Inc., et al.,* Case No. 502004 CA 003302 MB (AI) (the "Zia Action"). The Zia Action asserted claims under the Securities Act similar to those, and on behalf of the same class of MSN stockholders, in the Federal Actions. Defendants removed the Zia Action to the United States District Court for the Southern District of Florida and the Zia Action was remanded back to the Florida Circuit Court. On January 6, 2005, the Florida Circuit Court stayed proceedings in the Zia Action until further order of the court. The action remains stayed.

Exchange Act of 1934 (the "Exchange Act"), and of Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"). These initial complaints alleged that in connection with MSN's April 18, 2002 Initial Public Offering ("IPO"), Defendants disseminated to the investing public a Registration Statement and Prospectus (the "IPO Documents") that contained materially misleading statements and/or omissions of material facts. Additionally the complaints alleged that during the Class Period, MSN and certain Individual Defendants knowingly or recklessly made material misrepresentations and/or failed to disclose material facts to the investing public regarding the Company's true financial condition with respect to the performance of its *de novo* branches.

On July 1, 2004, the Court issued an order consolidating the four cases. By order dated July 2, 2004, the Court appointed Thomas Greene to serve as Lead Plaintiff, and approved his selection of lead counsel.[3]

**B.    Amended Complaint and Defendants' Motion to Dismiss**

Plaintiff filed the CAC on September 1, 2004. To prepare the CAC, Plaintiff continued his investigation, including, among other things, hiring experts to analyze the potential damages caused by Defendants' allegedly fraudulent conduct, and interviewing witnesses with knowledge of the allegations to obtain the requisite specificity to plead fraud in the level of detail required by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

---

[3] At this time, the Court appointed Cauley Geller Bowman & Rudman LLP to serve as Lead Counsel. However, the Cauley Geller firm split into two firms: Cauley Geller Bowman Carney & Williams, LLP and Geller Rudman, PLLC. Geller Rudman, PLLC then merged with Lerach Coughlin Stoia & Robbins, LLP, which is now known as Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin").

On November 4, 2004, Defendants filed a motion to dismiss the CAC, and Plaintiff filed his opposition on January 3, 2005.[4]  On September 27, 2005, the Court issued an order granting in part Defendants' motion to dismiss the CAC by dismissing Counts III and IV of the CAC that related to statements made before October 29, 2002 and granted Plaintiff leave to further amend the complaint. Thus, the Court found that with respect to Plaintiff's 10b-5 claim, the Class Period should begin on October 29, 2002 as opposed to April 18, 2002.

### C.    Class Certification

Plaintiff filed his motion for class certification on January 17, 2006.  Although Defendants opposed that motion, by order dated May 15, 2006, the Court certified two classes: (a) a "10b-5" class consisting of all investors who purchased or otherwise acquired MSN's common stock between October 29, 2002 and June 16, 2003, inclusively; and (b) a "Section 11 Class" that includes all investors who acquired shares of MSN's common stock pursuant or traceable to the IPO Registration Statement and Prospectus issued in connection with MSN's April 18, 2002 Initial Public Offering. The certified Classes excluded Defendants, members of the Individual Defendants' family, any entity in which any Defendant has a controlling interest, the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such excluded party. The Court also appointed Thomas Greene as class representative.

### D.    Discovery and Motion Practice

Following the partial denial of Defendants' motion to dismiss, discovery commenced, during which Defendants produced over 321,000 documents to Plaintiff.  In addition, Plaintiff served third-

---

[4] Plaintiff filed a Corrected Memorandum in Opposition to Motion to Dismiss Consolidated Amended Class Action Complaint on January 31, 2005.

party subpoenas on and received additional documents from various former employees. Plaintiff, with his counsel, thoroughly reviewed and analyzed all the produced documents. Each of the parties also retained and designated experts to testify concerning the damages, if any, caused by the Defendants' alleged wrongdoing. Plaintiff, through his counsel, also conducted numerous depositions. At the same time, the parties engaged in discovery motion practice.

### E.    Estimated Damages

The parties estimated damages in this case ranged from as low as $1.12 per share to as high as $4.01 per share. The Notice informed the Class that $5 million Settlement Amount would yield an average recovery of $0.45 per damaged share but that this figure was dependent upon the number of eligible shares that participated in the Settlement and when those shares were bought or sold.[5]

### F.    The Settlement

The parties mediated this case with the assistance of Mark Buckstein on November 20, 2006. During the mediation, extensive negotiations took place, which lasted the entire day and resulted in a settlement between the parties. Lead Counsel subsequently prepared a draft of the Stipulation and circulated it for review by and comments from Defendants' counsel.

Lead Counsel and Defendants' counsel signed the Stipulation on December 12, 2006, and filed it with the Court the same day. On December 13, 2006, the Court granted the parties' Joint Motion for Preliminary Approval and Incorporated Memorandum of Law, and in so doing, approved the form of the Notice, the Proof of Claim and Release (the "Proof of Claim"), the Summary Notice and scheduled the final approval hearing, among other things.

---

[5] This average recovery is calculated before the deduction of Court-approved fees and expenses.

The Preliminary Order directed Lead Counsel to cause the mailing of the Notice and the Proof of Claim to all potential Class Members identifiable with reasonable effort from the transfer records provided to Lead Plaintiff by the Defendants. The Court directed the mailing to be effected by January 12, 2007. The Preliminary Order also directed Lead Counsel to cause the Summary Notice of Settlement of Class Action ("Publication Notice") to be published in the national edition of *Investor's Business Daily* and over the internet *via Business Wire* or *PR Newswire* within 10 days of the mailing of the Notice.

As required by the Preliminary Order, the Court-approved Claims Administrator caused to be mailed 647 pieces of mail containing copies of the Notice to potential Class Members on January 12, 2007. In compliance with the Preliminary Order, the Publication Notice was published in *PR Newswire* and in *Investor's Business Daily* on January 19, 2007.

The Notice provided that any requests for exclusion from the Class and any objections to the Settlement, the Plan of Allocation, and the application of attorneys' fees and reimbursement of expenses were to have been postmarked by February 16, 2007. To date, no objections have been filed and no requests for exclusion were made.

### G.    Fees and Expenses Incurred by Lead Counsel and Plaintiff

Lead Counsel expended considerable time and efforts prosecuting this litigation. Lerach Coughlin generated hourly fees amounting to $1,046,811.25. (Astley Decl. at Ex.C, ¶6).[6] The

---

[6] The declaration of Stephen Astley and Thomas Greene in support of an application for attorneys' fees and reimbursement of expenses are attached to the Astley Decl. as Exhibits C and D, respectively.

aggregate amount of expenses generated by Lead Counsel in this litigation total $273,974.32. (*Id.* at

¶8). Plaintiff Greene incurred costs in the range of $11,200-$14,000. (Astley Decl., Ex.D at ¶¶7-8).[7]

## III.    THE SETTLEMENT SHOULD BE APPROVED

A class action "shall not be dismissed or compromised without the approval of the court, and

notice of the proposed dismissal or compromise shall be given to all members of the class in such

manner as the court directs." Fed. R. Civ. P. 23(e). Class Members in this action have been notified

of the Settlement in accordance with the Preliminary Order.

When reviewing a proposed settlement, the court must determine whether the action satisfies

two tests. First, it must be maintainable as a class action under Rule 23 of the Federal Rules of Civil

Procedure. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Second, the court must find that the settlement is "fair, adequate and reasonable and is not the

product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.

1984) (citing *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977)); *Access Now, Inc. v. Claire's*

*Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 *4 (S.D. Fla. May 7, 2002).

This Court has already determined that this action meets the criteria of Rule 23, and certified

the Class by order dated May 15, 2006. Accordingly, the Court must now limit its inquiry to whether

the Settlement is "fair, adequate and reasonable and is not the product of collusion between the

parties." *Bennett*, 737 F.2d at 986. This Settlement clearly satisfies this standard.

---

[7] Plaintiff's costs were calculated by multiplying his hourly rate of $200-250 by the number of hours
he expended on this case, which precluded him from working on other matters (56 hours). (Astley
Decl., Ex. D).

## A.     The Settlement is Fair, Adequate and Reasonable

The fairness of a settlement is left to the sound discretion of the district court and that decision should not be overturned absent a clear showing of abuse of discretion. *Sterling v. Stewart*, 158 F.3d 1199, 1202 (11th Cir. 1998); *Bennett*, 737 F.2d at 986; *Cotton*, 559 F.2d at 1331. "Great weight" is accorded to the trial judge's views in the evaluation of a class action settlement because:

> he is exposed to the litigants, and their strategies, positions and proofs. He is aware of the expense and possible legal bars to success.  Simply stated, he is on the firing line and can evaluate the action accordingly.

*Ace Heating & Plumbing Co., v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971).  *See also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988) ("[A] trial judge is in the best position to evaluate the settlement because he is directly exposed to the litigation.").

### 1.     There Was no Fraud or Collusion in Reaching the Settlement

A proposed settlement is presumptively fair and reasonable when it is the result of arm's length negotiations. *See 2 Newberg on Class Actions*, § 11.41 at 11-88 (3d ed. 1992); *see also Annotated Manual for Complex Litigation Third*, § 30.42 at 276 (2000) ("a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel"). Such negotiations between counsel possessed of "experience and ability . . . necessary to effective representation of the class's interests," ensure fair resolution. *Id.*; *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000); *In re Domestic Air Transp. Antitrust Litig*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993). Absent collusion, a court should give significant weight to the judgment of counsel. *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (citations omitted); *Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir. 1982); *Behrens*, 118 F.R.D. at 538-39 (a court "can rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own

judgment for that of counsel.'") (citing *Cotton*, 559 F.2d at 1330); *Warren v. City of Tampa*, 693 F.

Supp. 1051, 1060 (M.D. Fla. 1988) ("[t]he Court is affording great weight to the recommendations

of counsel for the parties, given their considerable experience in this type of litigation.").

       This Settlement was reached after almost three years of litigation and extensive arm's length

negotiations among counsel for the parties. Lead Counsel has conducted a comprehensive

investigation of the claims and the underlying events and transactions, and engaged in extensive

discovery. Lead Counsel has also analyzed the information obtained and have researched the

applicable law with respect to the claims and the potential defenses. Moreover, Lead Counsel has

concluded that the terms and conditions of this Settlement are fair, reasonable and adequate to

Plaintiff and the Class, and agreed to settle the claims after considering: (i) the substantial benefits

that Plaintiff and the Class will receive from the Settlement; (ii) the attendant risks of further

litigation; and (iii) the desirability of consummating the Settlement as provided in the Stipulation.

Thus, there is nothing in the course of the negotiations or the substance of the Settlement that

"disclose[s] grounds to doubt its fairness." *The Manual for Complex Litigation* §30.41. To the

contrary, the arm's length nature of the negotiations and the participation of experienced counsel

throughout the process sufficiently demonstrate the Settlement's fairness.

### 2.    Application of the Fairness Factors Warrants Approval of the Settlement

       The Eleventh Circuit has suggested that, in determining whether a class action settlement is

fair, reasonable and adequate, and thus, should be approved, the district court should consider: (i) the

stage of the proceedings at which the settlement was achieved; (ii) the likelihood of success at trial;

(iii) the range of possible recovery; (iv) the point on or below the range of possible recovery at

which a settlement is fair, adequate and reasonable; (v) the complexity, expense and duration of the

litigation; and (vi) the substance and amount of opposition to the settlement. *See Bennett*, 737 F.2d

at 986. Courts have emphasized, however, that these factors should not be applied in a "formalistic" fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) ("A class action settlement cannot be measured precisely against any particular set of factors."). Basic to the determination of whether a settlement is fair, reasonable and adequate "is the need to compare the terms of the compromise with the likely rewards of litigation." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (quoting *Weinberger*, 698 F.2d at 73).

Consideration of these relevant factors establishes that the Settlement is fair, reasonable and adequate. This Settlement reflects Lead Counsel's view that the value of immediate and certain resolution of Plaintiff's claims outweighs the risks of continued litigation.

### a. The Stage of the Proceedings at Which Settlement Was Achieved Supports Approval of the Settlement

"[T]he stage of the proceedings" is considered in determining the fairness, reasonableness and adequacy of a proposed class action settlement. *Weinberger*, 698 F.2d at 74; *In re Baldwin-United Corp.*, 607 F. Supp. 1312, 1320 (S.D.N.Y. 1985); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). This consideration ensures that plaintiffs have had an opportunity to evaluate their case and assess the adequacy of any settlement proposal in light of the strengths and weaknesses of their position. *See Chatelain*, 805 F. Supp. at 213-14.

Here, Plaintiff was able to negotiate a substantial Settlement after extensively investigating the claims and the underlying events and transactions. Plaintiff's investigation throughout the litigation included: (i) review and analysis of all public filings, financial statements, press releases, and other publicly available information concerning the Company; (ii) conducting interviews of fact witnesses; and (iii) consultations with expert witnesses. Plaintiff briefed his opposition to Defendants' motion to dismiss the CAC. Plaintiff also reviewed over 321,000 documents produced in discovery and took numerous depositions. Thus, Plaintiff had a clear picture of the strengths and

11

weaknesses of his case and of the defenses that Defendants would likely raise at trial. As such, Lead Counsel certainly had sufficient information to act intelligently in negotiating the terms of the Settlement. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021-22 (N.D. Ill. 2000) (court concluded that class counsel had ample opportunity to reach an informed decision concerning the merits of the proposed settlement), *aff'd*, 267 F.3d 743 (7th Cir. 2001), *Warner Commc'ns*, 618 F. Supp. at 745. The Court should give great weight to this consideration. *See, e.g., In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910 (S.D.N.Y. 1991), *aff'd*, 960 F.2d 285 (2d Cir. 1992). The risk and expense of continuing to litigate this case are not justified in light of the valuable benefits of the Settlement.

### b.    The Likelihood of Success at Trial

Courts acknowledge that pursuing litigation to completion is inherently risky and costly. *See Woodward v. Nor-Am Chem. Co.*, No. 94-0780-CB, 1996 WL 1063670, at *16 (S.D. Ala. May 23, 1996) ("In any case there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion").[8] Courts attempting to balance this factor have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973). This factor requires the Court to balance the likelihood of ultimate success on the merits against the relief offered by the proposed settlement. *Whitford*, 147 F.R.D. at 140.

_____

[8] Citations and footnotes are omitted, and emphasis is added, unless otherwise noted.

Plaintiff would assuredly face difficulty in opposing Defendants' position that the alleged misstatements and omissions were not material. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976). Defendants could conceivably show that the alleged misstatements were immaterial in that no reasonable investor would view such misstatements as significantly altering the "total mix" of information made available. *Id.* at 449. Additionally, Defendants would likely assert that, after a reasonable investigation, they had reasonable grounds to believe that there were no material omissions in their public statements. Moreover, it is uncertain that Plaintiff would prove that Defendants' had scienter for the misstatements and omissions made during the earlier part of the Class Period with respect to Plaintiff's 10b-5 claim.

Even if Plaintiff was successful in establishing liability, he nonetheless would face substantial risks in proving damages. Inevitably, the question of damages would spark sharp disagreement among the parties' respective experts, as was already evident based on their respective reports. Lead Counsel recognizes that substantial disagreement in the form of expert testimony would likely exist at trial as to the critical issues of the value of the securities at each point in time when each security was purchased. While Lead Counsel believes that Plaintiff could offer convincing expert testimony as to damages and prevail, Lead Counsel also realizes "it is certainly not inconceivable that, in the unavoidable 'battle of experts,' a jury might disagree with [the Plaintiff Class]." *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 320 (D.N.J. 1998); *accord Warner Commc'ns*, 618 F. Supp. at 744-45 (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of nonactionable factors such as general market conditions.").

13

Collectively, these factors could potentially lead to dismissal of all or part of Plaintiff's claims on a motion for summary judgment, or even lead a jury to render a defense verdict at trial. *See Biben v. Card*, Nos. 84-0844-CV-W-6, 84-0846-CV-W-6, 84-0978-CV-W-6, 1991 U.S. Dist. LEXIS 18448 (W.D. Mo. Dec. 10, 1991) ("a jury verdict in [plaintiffs'] favor against the settling defendants is by no means a certainty"). Accordingly, although he believes that his claims have merit and that he could succeed at trial, Plaintiff, in light of the potential defenses, has opted for an immediate and tangible benefit for the Class, rather than unnecessarily expending a substantial amount of time and effort on a risky endeavor. Thus, a settlement that provides an immediate cash benefit is a better result for the Class.

### c.    The Settlement is Within the Range of Possible Recovery

The benefits of the Settlement justify approval. Because of the inherent uncertainties of securities litigation, a settlement in the amount of $5 million, without the additional costs and fees associated with a trial by jury, is of great and immediate benefit to the Class.

Courts agree that a reasonable settlement is not susceptible to mathematical precision. Indeed, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986). Indeed, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974). "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2; *see also Gulf Oil/Cities Serv. Tender Offer Litig*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992) (approving settlement that would provide "a bit more than 48 cents per share" out of the potential recovery of

approximately $30 per share). In *Grinnell*, the court found a proposed settlement of 3.2% to 3.7% of the potential recovery "well within the ball park." 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) *aff'd in part*, 495 F.2d 448 (2d Cir. 1974); *accord Weinberger*, 698 F.2d at 65 (upholding settlement that amounted to "only a negligible percentage of the losses suffered by the class").

The Settlement provides for payment of $5 million in cash now, not the promise of payment years down the road. *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F. 2d 179 (2d Cir. 1987). This recovery enables the Class to recover an estimated average of $0.45 per damaged share. This represents an excellent recovery when compared to the range of damages estimated by the parties' experts. Those estimates range between $1.12 and $4.01 per share. Thus, the $0.45 average recovery is approximately 11% of the high end of estimated damages and 40% of the lower end damages estimate. Given the obstacles and uncertainties attendant to this complex litigation, the Settlement is well within the range of reasonableness, and is unquestionably better than the distinct possibility of no recovery at all.

### d.    The Complexity, Expense and Duration of the Litigation

As the Court knows, "[i]t is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton*, 559 F. 2d at 1331. Securities class actions are extremely complex as they are notoriously difficult to prove and are vigorously defended. *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("[s]tockholder litigation is notably difficult and unpredictable"); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 529 (E.D. Pa. 1990) ("[s]tockholder litigation is notably difficult and notoriously uncertain"); *Krangel v. Golden Rule Res., Ltd.*, 194 F.R.D. 501, 507 (E.D. Pa. 2000) ("Securities class actions are inherently complex.") (citation omitted).

15

The foregoing principles are certainly applicable here. Continued litigation against Defendants would be of substantial duration and cost. If this litigation were to continue, significant additional time and resources would be necessary to complete pre-trial proceedings and proceed to trial. *See Warren*, 693 F. Supp. at 1059 (observing that "[t]he parties estimate that a trial of this case would take three weeks of Court time, and would costs [sic] hundreds of thousands of dollars in attorneys' fees, expert witness fees, and costs.").

Additionally, trial preparation would have been a massive endeavor in this case. Lead Counsel would have to expend many hours preparing for direct and cross-examination, identify and/or prepare the many exhibits for trial and engage in expected pre-trial motion practice, including motion for summary judgment and motions *in limine*. The trial itself would probably require several weeks, "with its attendant pretrial order, laborious winnowing of proof before trial, and post-trial skirmishing." *Gulf Oil/Cities Serv.*, 142 F.R.D. at 591. Moreover, any trial judgment would still be subject to the continuing risks of litigation through likely appeals. Even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal or as a result of a judgment notwithstanding the verdict.

In sum, the merits of the Settlement should be balanced against the expense of achieving a more favorable result at trial. *See Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971). Indeed, courts recognize that "[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class." *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (citation omitted). Thus, Lead Counsel believes that continued litigation of this action would be complex, time-consuming and expensive, with the chances of obtaining a recovery greater than that provided by the Settlement far from assured. The

Settlement secures for the Class a substantial benefit undiminished by further litigation expenses, and without the delay, risk and uncertainty of continued litigation.

### e.    Extent and Substance of Opposition to the Settlement

"It is well settled that 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *In re Am. Bank Note Holographies, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (quoting *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)).  The absence of objections may evidence the fairness of a proposed settlement. *PaineWebber*, 171 F.R.D. at 126; *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-cv-4318, 2001 U.S. Dist. LEXIS 8418, at *10 (S.D.N.Y. June 22, 2001) ("It is particularly notable that there were no objectors.") (citation omitted).

Here, the deadline for submission of objections to, or requests for exclusion from, the Settlement was February 16, 2007.  Following the mailing of the Notice to Class Members, and publication of the Summary Notice in *PR Newswire* and *Investor's Business Daily*, no Class Member has objected to or requested exclusion from the Settlement. Thus, the reaction of the Class to the Settlement overwhelmingly supports approval by the Court. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court, though 'a settlement is not unfair or unreasonable simply because a large number of class members oppose it.'"). *Compare Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23-24 (2d Cir. 1987) (settlement may be considered fair despite opposition from less than half the class members); *Domestic Air Transp.*, 148 F.R.D. at 326 ("The number of objectors is but a factor in the Court's consideration.  'A settlement can be fair notwithstanding a large number of class members who oppose.'  The

objections to the settlement in this instance, however, are a very small percentage of the ten million notices served . . .") (quoting *Cotton*, 559 F.2d at 1331).

**B.      Notice to Class Members and Opportunity to Present Their View**

Due process requires that, in a class action, notice of the settlement and an opportunity to be heard be given to absent class members. *Cf. Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("notice given to members of the plaintiff class by publication and by mail, as aforesaid, complied with all the requirements of due process, all requirements of Rule 23 of the Federal Rules of Civil Procedure, and constituted the best notice practicable under the circumstances."). Rule 23(e) requires that the notice fairly apprise class members of the terms of the proposed settlement. The Notice, the form of which was approved by this Court in the Preliminary Order, was sent to 647 potential Class Members informing them of the Settlement. In addition to other pertinent Settlement information, the Notice included information regarding: (i) the amount of the settlement proposed to be distributed to the Class; (ii) an explanation of the issues regarding the average amount of damages per share; (iii) an explanation of attorneys' fees and costs sought; (iv) the name, telephone number, and address of Lead Counsel who will be reasonably available to answer questions from Class Members concerning matters contained in the Notice; and (v) a brief explanation of the reasons why the parties propose the settlement. 15 U.S.C. §77z-l(a)(7). As such, the Notice fairly informed the potential Class Members of the Settlement and their individual rights thereto.

**IV.      THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED**

Approval of a plan of allocation of settlement proceeds in a class action is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS

21593, at *3 (N.D. Cal. June 16, 1994) (citation omitted); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). An allocation formula need only have a rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994); *see also Oracle*, 1994 U.S. Dist. LEXIS 21593, at *3 ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

A.    **The Structure of the Plan of Allocation**

The Plan of Allocation, fully described in the Notice, was formulated by Lead Counsel, with the assistance of a financial economist expert, ensuring its fairness and reliability. Under the Proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the "Net Settlement Fund" (*i.e.,* the Settlement consideration, plus interest thereon, less certain taxes, fees and expenses), with that share to be determined by the ratio that the Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all Authorized Claimants and the period in which the Claimant bought and sold his or her stock.

Recognized Claims will be calculated for the purposes of settlement based on when the Claimant sold his or her shares. Damages based on sale date are detailed in the Tables attached to the Astley Decl. as Ex.B. Table 1 indicates the damages that claimants with Section 11 claims will receive. (Astley Decl., Ex. B, Notice, p.4). Table 2 indicates the damages that claimants with Section 10b-5 claims will receive. (Astley Decl., Ex. B, Notice, p.5).

Purchases during the Class Period will be matched against sales during the Class Period on a First-In, First-Out basis, and transactions resulting in gains will not be included. Class Members who do not submit acceptable Proofs of Claim will not share in the settlement proceeds. Class Members who do not submit either a request for exclusion or an acceptable Proof of Claim will

nevertheless be bound by the Settlement and the Order and Final Judgment of the Court in dismissing this litigation.

### B.    The Plan is Fair, Reasonable and Adequate and Should be Approved

Although certain members of the Class will benefit differently under the Plan of Allocation, "there is no rule that settlements benefit all class members equally . . . ." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983). It is appropriate for allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 349 (N.D. Tex. 1976), *aff'd sub nom.*, *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1977). Lead Counsel acted fairly in developing the Plan of Allocation, by taking into account the relative strength of the claims and whether the shares were sold or held. Accordingly, Lead Counsel respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved by the Court.

### V.    COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND FOR REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED

#### A.    The Requested Counsel Fees Are Appropriate and Should Be Awarded

The award of counsel fees in this action is governed by the common-fund doctrine. The Supreme Court has recognized that when a common fund is successfully established for the benefit of a class, the cost of litigation and reward for counsel's efforts should be spread among the common fund's beneficiaries. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole."). The Eleventh Circuit has also recognized that attorneys who create a common fund are entitled to be compensated for their efforts from a

percentage of that fund. *Camden I Condo. Ass 'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). The court held:

> Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.
>
> * * *
>
> The majority of common fund fee awards fall between 20% to 30% of the fund . . . [and] an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded.

*Id.* at 774-75. Although the *Camden* court identified 25% as a "benchmark" percentage fee award, it specified that this percentage "may be adjusted in accordance with the circumstance of each case." *Id.* at 775. In fact, other district courts in this Circuit have awarded percentages as high as 33⅓% of the gross settlement fund. *E.g., In re HealthTronics Surgical Servs., Inc. Sec. Litig.*, No. 03-CV-2800-CC (N.D. Ga. Dec. 1, 2005); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.*, No. 00-CV-1416-CC (N.D. Ga. May 26, 2005); *In re Clarus Corp. Sec. Litig.*, No. 00-CV-2841-CAP (N.D. Ga. Jan. 6, 2005); *Cheney v. Cyberguard Corp.*, No. 98-6879-CIV-Gold/Simonton (S.D. Fla. May 7, 2004). Here, Lead Counsel seeks an attorneys' fee award of 30% of the Gross Settlement Fund. Although the award sought here is a little more than the suggested "benchmark," it is less than what other courts have awarded in the past. Additionally, the 30% fee sought by Lead Counsel meets other factors used to determine the appropriateness of a fee award.

In *Camden*, the court enumerated factors that the Court may consider in determining the percentage of a fund to be applied to a case: (i) the time and labor required; (ii) the novelty and difficulty of the questions involved; (iii) the skill requisite to perform the legal services properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the

circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. The court in *Camden* also stated:

> Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration.

946 F.2d at 775. While each of the above factors may be an appropriate consideration, "the factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary." *Id.*

### 1.    The Time and Labor Required

The prosecution of this action has been highly focused and time-intensive. Lead Counsel has expended a total of 2,600 hours in this litigation. (Astley Decl., Ex.C, ¶6). As discussed above, during the past three years, Lead Counsel has, among other things:

■    Independently investigated Plaintiff's claims, conducted interviews of former MSN employees and consulted with expert advisors;

■    Conducted extensive and ongoing legal research and drafting in connection with, *inter alia*, the preparation of the initial complaints and the consolidated amended complaint;

■    Researched, drafted, and filed an opposition to Defendant's motion to dismiss;

■    Researched, drafted, and filed Plaintiff's motion for class certification and multiple discovery motions;

■    Completed all fact document and deposition discovery;

■    Worked with experts to calculate damage and loss estimates;

- ■    Formulated litigation strategy and regularly communicated with clients;

- ■    Prepared for the mediation of the case and negotiated the settlement with Defendants' counsel; and

- ■    Attended to matters related to the administration of the Settlement.

An analysis of Lead Counsel's lodestar also confirms the reasonableness of the requested fee. Lead Counsel expended 2,602.75 hours in the investigation, prosecution and settlement of this litigation and the resulting lodestar is $1,046,811.25. The information with respect to the total lodestar is contained in the Astley Declaration submitted herewith. On a Lodestar basis, the requested fee represents a multiplier of 1.43 times lodestar. The multiplier here falls well within the bottom of the range of multipliers found reasonable for cross-check purposes by courts in common fund cases and is fully justified given the effort required, the risks faced and overcome and the outstanding results achieved.[9]

### 2.    The Contingent Nature of the Representation and the Preclusion of Other Employment

Lead Counsel prosecuted this case on a wholly contingent basis under the common-fund theory, and has received no compensation for their services in this action since it was initiated in 2004. Courts have long recognized that the attorneys' contingent-fee risk is an important factor in

---

[9] *See LaGrasta v. Wachovia Capital Markets,* No. 2:01-cv-251, 2006 U.S. Dist. LEXIS 80838, at *2-3 (M.D. Fla. Nov. 6, 2006) (awarding a fee of 30% of $30 million to lead counsel which represented a 2.7 multiplier). *See Golebiowski v. Mega Life & Health Ins. Co.,* No.3:04-CV-00831, 2005 U.S. Dist. LEXIS 614, at *8 (N.D. Tex. Jan. 14, 2005) (noting that multiplier of 4 was reasonable); *Plains* 2001 U.S. Dist. LEXIS 25532 (awarding 30% fee equal to lodestar with 5.3 multiplier); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) (awarding 33-1/3% of settlement fund and finding that "it clearly appears that the modest multiplier of 4.65 is fair and reasonable").

determining the fee award. *See, e.g., Jones v. Central Soya Co.*, 748 F.2d 586, 591 (11th Cir. 1986).

In *Behrens*, the court noted:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. Most often, this method of representation is the only means by which a defrauded securities investor can seek assistance from an attorney. Through this relation, the fundamental policies supporting the federal securities laws are promoted. A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus methodology' did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing.
>
> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature, and, in order to effectuate the statutory purpose of protecting investors and consumers, private lawsuits should be encouraged.

118 F.R.D. at 548. The burden of potential financial loss that Lead Counsel accepted is compounded by their effective preclusion of other employment by this case. Additionally, this action has required a significant financial commitment by Lead Counsel, who have either expended or obligated themselves to pay approximately $273,974 in out-of-pocket costs to finance this litigation with no guarantee that those funds would be recovered. These expenditures were fully warranted to fully develop this case and prepare it for trial.

### 3.    The Novelty and Difficulty of the Questions Involved, the Skill Required to Perform the Legal Services Properly and Counsel's Experience

In assessing the quality of work performed and the risk undertaken by Lead Counsel, the complexity and magnitude of the litigation must be considered, as well as the difficulty of the questions involved. Here, Plaintiff "faced all the multifaceted and complex legal questions endemic to §10(b) litigation, including proving scienter, materiality, causation and damages." *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). The record demonstrates that this litigation is

highly complex, involving thorny, and often unresolved, legal issues and difficult assembly of proof. As mentioned above, Defendants raised difficult questions about materiality, scienter, and the adequacy of Defendants' disclosures. Thus, without this Settlement, Plaintiff faced a risk that the Court could grant summary judgment or that Plaintiff could lose at trial.

Counsel's fees should also reflect the degree of experience, competence and effort necessary to achieve the proposed settlement. It is important to provide experienced counsel with incentives to take complex cases on a contingent-fee basis, so that those cases can be prosecuted effectively. Lead Counsel here are experienced securities class action lawyers. Lead Counsel's experience allowed them to identify the complex issues involved and to formulate effective strategies to prosecute the case.

### 4.    The Customary Fee for Similar Cases

Another factor to be considered in arriving at a percentage fee award is the amount of awards in similar cases. "Awards of 30% or more of a settlement fund are not uncommon in §10(b) common fund cases such as this." *Ressler*, 149 F.R.D. 651 at 655. The requested fee of 30% of the Gross Settlement Fund is in the range of, and consistent with, the percentage of the common fund awarded to counsel in securities class actions in Florida federal district courts since the percentage of fund approach was adopted by the Eleventh Circuit in *Camden*. *See, e.g., Mark L. Underwood, et al. v. Ira B. Lampert, et al.*, No. 04-cv-21154-CMA (S.D. Fla. Jan. 29, 2007) (30% fee); *Primavera Investors v. Liquidmetal Techs., Inc.*, No. 04-cv-919-T-23EAJ (M.D. Fla. Oct. 19, 2006) (30% fee); *Reina v. Tropical Sportswear Int'l, Inc.*, No. 03-cv-1958-T-23TGW (M.D. Fla. July 11, 2006) (30% fee); *In re Hamilton Bancorp Sec. Litig.*, No. 01-156-CIV- Martinez (S.D. Fla. Mar. 21, 2005) (30% fee); *In re UniCapital Corp. Sec. Litig.*, No. 00-2054-CIV-Highsmith (S.D. Fla. Jan. 26, 2005) (30% fee); *In re Paradyne Networks, Inc.*, No. 00-cv-2057-T-17TBM (M.D. Fla. July 9, 2004) (30% fee);

*In re Ins. Mgmt. Solutions Group Sec. Litig.*, No. 8:00-CV-2013-T-26MAP (M.D. Fla. July 18, 2003) (30% fee); *Moriarty v. Let's Talk Cellular Inc.*, No. 99-0225-Civ-Moreno (S.D. Fla. May 6, 2003) (30% fee); *Graf v. Cyber-Care Inc.*, No. 00-8404-Civ-Ryskamp (S.D. Fla. Dec. 20, 2002) (30% fee); *Holmes v. Baker*, No. 99-2560-Civ-Moreno (S.D. Fla. Aug. 21, 2002) (30% fee); *Shipping Fin. Servs. v. Able Telcom Holding Corp.*, No. 98-863 3-Civ-Hurley (S.D. Fla. May 23, 2002) (30% fee); *In re Phoenix Int'l Ltd. Inc. Sec. Litig.*, No. 99-1495-Civ-ORL-18C (M.D. Fla. May 6, 2002) (30% fee); I*n re CHS Sec. Litig*, Case No. 99-8186-Civ-Gold (S.D. Fla. Mar. 1, 2002) (30% fee); *Lopez v. Checkers Drive-In Rests., Inc.*, No. 94-282-Civ-T-17C (M.D. Fla. 1996) (30% fee); *Minnick v. Pages, Inc.*, No. 95-277-Civ-T-21C (M.D. Fla. 1996) (30% fee); *Tapken v. Brown*, No. 90-0691-Civ-Marcus (S.D. Fla. 1995) (33% fee); *Kaser v. Swann*, No. 90-607-Civ-ORL-3A18 (M.D. Fla. 1993) (30% fee); *In re Perfumania, Inc. Sec. Litig*, No. 92-1490-Civ-Marcus (S.D. Fla. 1993) (30% fee); *In re Homeshopping Network Sec. Litig*, No. 87-428-Civ-T-13(A) (M.D. Fla. 1991) (33.3% fee).[10]

### 5.    Other Factors

Securities fraud cases like this one are undesirable because they are inherently risky. They require a thorough and lengthy, not to mention expensive, investigation of plaintiff's claims without the benefit of full discovery. The financial burden on counsel and the time demands of litigating a

---

[10]The percentage of the fund requested here is also comparable to fees that have been awarded in class actions in other jurisdictions. *E.g., In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 300 (1st Cir. 1995) (approving district court's award of "roughly $68,000,000" of the approximately $220,000,000 settlement fund, or 30.9%); *In re Copley Pharm.*, No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (33.3%); *Fulco v. Cont'l Cablevision, Inc.*, No. 89-1342-WGY (D. Mass. Mar. 30, 1994) (32%); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (33.8%); *Gulf Oil/Cities Serv.*, 142 F.R.D. 588 (30%); *In re Genentech, Inc. Sec. Litig.*, No. C-88-4038 (DLJ) (N.D. Cal. 1991) (30%); *Malanka v. DeCastro*, [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95, 657 (D. Mass. Nov. 20, 1990) (33%).

class action of this size and complexity easily render the case "undesirable." *Garza v. Sporting Goods Props., Inc.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *118 (W.D. Tex. Feb. 6, 1996) (*citing In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993)).

The factor regarding the nature and length of the professional relationship with the client is also met here. Lerach Coughlin has been involved in this litigation since its inception,[11] and is the original Lead Counsel appointed by this Court. Thus, Lead Counsel has dedicated their efforts to protect the best interests of Lead Plaintiff and the Class. *See Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223, at *39 (N.D. Okla. May 28, 2003) (observing that counsel's substantial involvement in the litigation satisfies this factor).

The remaining *Camden* factors have also been satisfied. The factor relating to the amount involved and the results obtained in the settlement is discussed in section III.A.2.c above. In addition, the factor relating to the time limitations imposed by the client or the circumstances is inapplicable to this case.

**B.    Reimbursement of Costs**

Lead Counsel also seeks reimbursement of $250,000, plus interest, which represents the cost and expense incurred by counsel in prosecuting this action.[12] The declaration of Lead Counsel describing in detail the expenses and costs incurred for which reimbursement is sought are attached to the Astley Decl. as Ex. C. The Notice advised Class Members that Lead Counsel would apply for reimbursement of these expenses in the approximate amount of $250,000. Lead Counsel has

---

[11]*See* footnote 3 above.

[12] Although, as discussed above, Lead Counsel's actual expenses were $273,974.23, pursuant to the Notice issued to the Class, Plaintiff only seeks reimbursement for $250,000.

received no objections to their intent to seek reimbursement for those expenses. Thus, Plaintiff respectfully requests that the listed expenses and costs be awarded because they were necessary and appropriate in prosecuting this action.

Plaintiff Greene also seeks reimbursement of costs that he incurred in the course of this litigation. The PSLRA provides that, although class representatives must share the recovery in the same proportion as all class members, "[n]othing in this paragraph shall be construed to limit the award of reasonable cost and expense (including lost wages) directly relating to the representation of the class, to any representative party serving on behalf of the class." 15 U.S.C. §78u-4(a)(4). Such awards are granted where representation of the class has precluded the representatives from earning the full extent of their ordinary income. *See, e.g., Primavera Investors v. Liquidmetal Techs., Inc.*, No. 04-cv-919-T-23EAJ (M.D. Fla. Oct. 19, 2006) (awarding costs and expenses totaling $2,224.74 to two lead plaintiffs); *In re Hamilton Bancorp, Inc. Sec. Litig.*, No. 01-156-CIV-Martinez (S.D. Fla. Mar. 21, 2005) (awarding costs and expenses totaling $20,050 to three lead plaintiffs); *In re UniCapital Corp. Sec. Litig.*, No. 00-cv-2054-Highsmith/Dube (S.D. Fla. Jan. 19, 2005) (awarding costs and expenses totaling $10,140 to seven lead plaintiffs); *Cheney v. Cyber Guard Corp.*, No. 98-6879-CIV-Gold (S.D. Fla. May 7, 2004) (awarding costs and expenses to lead plaintiff in the amount of $4,800); *In re Tech. Chems. Sec. Litig.*, Case No. 98-7334-CIV-Dimitrouleas (S.D. Fla. Dec. 15, 2003) (awarding $4,087 to lead plaintiff who did not provide deposition testimony but otherwise actively participated in the litigation).

Plaintiff Greene has incurred costs and expenses directly related to his representation of the Class. He spent hours gathering documents in preparation for discovery, provided deposition testimony, attended the class certification hearing, reviewed documents that were filed in the course of the litigation, conferred with Lead Counsel throughout the litigation and considered the various

proposals during the settlement negotiations.   Thus, Plaintiff Greene fulfilled his duties as representative of the Class, incurring expenses and opportunity costs in the form of expenses and forgone income.   Therefore, Plaintiff Greene respectfully submits that he should be awarded reasonable costs.

## VI.    CONCLUSION

For all the foregoing reasons, the Court should approve the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and reimbursement of expenses, and enter the proposed Order and Final Judgment.

Respectfully submitted this 23rd day of February, 2007.

> **LERACH COUGHLIN STOIA GELLER**
> **RUDMAN & ROBBINS LLP**
>
> s/Stephen R. Astley
> _____
> JACK REISE
> Florida Bar No. 058149
> jreise@lerachlaw.com
> STEPHEN R. ASTLEY
> Florida Bar No. 0139254
> sastley@lerachlaw.com
> 120 East Palmetto Park Road, Suite 500
> Boca Raton, FL  33432
> Telephone:  561/750-3000
> 561/750-3364 (fax)
>
> *Lead Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either *via* transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Stephen R. Astley

Stephen R. Astley

# Mailing Information for a Case 9:04-cv-80158-WPD

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Paul Jeffrey Geller**
  pgeller@lerachlaw.com

- **Adam Jay Hodkin**
  hodkin@thkolaw.com

- **Samantha J. Kavanaugh**
  samantha.kavanaugh@akerman.com

- **Brian Paul Miller**

- **Brian Paul Miller**
  brian.miller@akerman.com

- **Jack Reise**
  jreise@lerachlaw.com e_file_fl@lerachlaw.com

- **Samuel H. Rudman**

- **Maya Susan Saxena**
  msaxena@saxenawhite.com amccook@saxenawhite.com;e-file@saxenawhite.com

- **Harry Richard Schafer**
  hrs@kennynachwalter.com mhernandez@kennynachwalter.com

- **Julie Prag Vianale**
  jvianale@vianalelaw.com kvianale@vianalelaw.com;pwolner@vianalelaw.com

- **Stanley Howard Wakshlag**
  swakshlag@kennynachwalter.com cdenison@kennynachwalter.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Scott L. Adkins
Lerach Coughlin Stoia Geller Rudman & Robbins
197 S Federal Highway
Suite 200
Boca Raton, FL 33432

Sameer Advani
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10022
```

**Sharon M. Blaskey**
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10022

**Curtis R. Cowan**
Hodkin Kopelowitz & Ostrow Firm PA
350 E Las Olas Boulevard
Suite 980
Fort Lauderdale, FL 33301-4216

**Eric Andrew Greenwald**
Akerman Senterfitt
Suntrust International Center
1 SE 3rd Avenue
28th Floor
Miami, FL 33131-1714

**Stephen W. Greiner**
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10022

**Tariq Mundiya**
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10022

**Jonathan H. Stein**
Securities & Exchange Commission
175 W Jackson Boulevard
Suite 900
Chicago, IL 60604

**Marc A. Topaz**
Schiffrin & Barroway
280 King of Prussia Road
Radnor, PA 19087

**Kenneth J. Vianale**
Vianale & Vianale
2499 Glades Road
Suite 112
Boca Raton, FL 33431

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-80158-Civ-Dimitrouleas/Torres

JOSEPH AND PATRICIA MARRARI, On     CLASS ACTION
Behalf of Themselves and All Others Similarly
Situated,

                  Plaintiffs,

    vs.

MEDICAL STAFFING NETWORK
HOLDINGS, INC., et al.,

                  Defendants.

_____ /

**DECLARATION OF STEPHEN R. ASTLEY IN SUPPORT OF PLAINTIFF'S MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT PLAN OF
ALLOCATION, AND AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF EXPENSES**

I, Stephen R. Astley, declare as follows:

1.      I am an associate with the firm of Lerach Coughlin Stoia Geller Rudman & Robbins

LLP ("Lerach Coughlin"), Lead Counsel for Plaintiff and the Class in this action. I make this

declaration in support of Plaintiff's motion for an order in the form attached hereto as Exhibit A,

providing for: (a) final approval of the Settlement; (b) approval of the Plan of Allocation; and (c)

approval of Lead Counsel's application for attorneys' fees and reimbursement of expenses. I have

personal knowledge of the matters set forth in this declaration, and, if called as a witness, I could and

would testify competently thereto.

## I.      PRELIMINARY STATEMENT

2.      The purpose of this declaration is to set forth the basis of this case, its procedural history, and the negotiations that led to the Settlement, the terms and conditions of which are contained in the Stipulation of Settlement filed on December 12, 2006 (the "Stipulation"). This declaration demonstrates why: (a) the Settlement and the Plan of Allocation are fair, reasonable and adequate, and should be approved by the Court; and (b) Lead Counsel's fee and expense requests are reasonable and should also be approved.

3.      The Settlement fund consists of $5 million in cash, plus interest thereon, which shall be collectively referred to as the "Gross Settlement Fund."

4.      The Settlement is the result of nearly two years of litigation, which included, among other things: (a) a detailed investigation by Lead Counsel, including extensive interviews with former employees of the Company, and consultation with accountants and other experts; (b) drafting an Consolidated Amended Class Action Complaint ("CAC") to comply with the rigorous pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (c) responding to Defendants' motion to dismiss the Complaint; (d) completing discovery following the partial denial of Defendants' motion to dismiss; (e) briefing and arguing a motion for class certification; and (f) engaging in settlement negotiations.

5.      Lead Counsel is requesting 30% of the Gross Settlement Fund as attorneys' fees, plus reimbursement of expenses in the amount of $250,000.00,[1] which were incurred in prosecuting this litigation over the past couple of years.  Additionally, Lead Counsel seeks reimbursement of costs

---

[1] Although Lead Counsel's expenses actually totaled $273,974.32, pursuant to the Notice sent to Class Members, Plaintiff does not seek more than $250,000.00 in reimbursement for these costs. (Ex. B).

and expenses incurred by Plaintiff Thomas Greene ("Plaintiff") in connection with his participation in this action. The fees and expenses sought are in accordance with the amounts set forth in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), which informed Class Members that Lead Counsel would be seeking a fee not to exceed 30 percent and expenses up to $250,000.

6. Significantly, after 647 copies of the Notice were mailed to potential Class Members, no Class Member has sought to be excluded from the Settlement by the February 16, 2007 deadline, and no objections to the Settlement have been received postmarked by that deadline. The approval of the Settlement by Class Members is the strongest indication that the Settlement is fair.

7. The Settlement is a good result and the product of hard-fought litigation. It was negotiated by experienced counsel with a solid understanding of the strengths and weaknesses of their respective positions. The Settlement confers an immediate and substantial benefit to the Class and eliminates the risk of continued litigation whose favorable outcome could not be assured. Accordingly, it is respectfully submitted that the Settlement and Plan of Allocation should be approved as fair, reasonable and adequate, and that Lead Counsel should be awarded attorneys' fees and reimbursement of expenses for obtaining this benefit for the Class.

## II. HISTORY OF THE LITIGATION

### A. Initial Complaints and Lead Plaintiff's Motion

8. Beginning February 19, 2004, three[2] putative class actions were commenced on behalf of shareholders of Medical Staffing Network Holdings, Inc. ("MSN" or the "Company"),

_____

[2] A fourth Class Action lawsuit was filed on March 29, 2004, in the Florida Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida styled *Haddon Zia v. Medical Staffing Network Holdings, Inc., et al.,* Case No. 502004 CA 003302 MB (AI) (the "Zia Action").

alleging violations of Section 11 and Section 15 of the Securities Act of 1933 (the "Securities Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC").

9.      These initial complaints alleged that in connection with MSN's April 18, 2002 Initial Public Offering ("IPO"), Defendants disseminated to the investing public a Registration Statement and Prospectus (the "IPO Documents") that contained materially misleading statements and/or omissions of material facts. Additionally the complaints alleged that during the Class Period, MSN, and certain individual Defendants knowingly or recklessly made material misrepresentations and/or failed to disclose material facts to the investing public regarding the Company's true financial condition with respect to the performance of its *de novo* branches.

10.     On April 19, 2004, Thomas Greene moved the Court for an order consolidating the related actions, appointing him as Lead Plaintiff, and approving his selection of Lead Counsel.

11.     Pursuant to the lead plaintiff motion, the Court consolidated the actions and dismissed the initial complaints with the exception of Case No. 04-cv-80158, by order dated July 1, 2004. On July 2, 2004, the Court issued an order appointing Thomas Greene as Lead Plaintiff, and approved his selection of Lead Counsel.[3]

---

The Zia Action asserted claims under the Securities Act similar to those, and on behalf of the same class of MSN stockholders, in the Federal Actions. Defendants removed the Zia Action to the United States District Court for the Southern District of Florida and the Zia Action was remanded back to the Florida Circuit Court. On January 6, 2005, the Florida Circuit Court stayed the proceedings in the Zia Action until further order of the court. The action remains stayed.

[3] In the Court's July 2, 2004 Order, it appointed Cauley Geller Bowman & Rudman LLP to serve as Lead Counsel. However, the Cauley Geller firm split into two firms: Cauley Geller Bowman Carney & Williams, LLP and Geller Rudman, PLLC. Geller Rudman, PLLC then merged with Lerach

**B.      Amended Complaints and Defendants' Motion to Dismiss**

12.      Plaintiff filed the CAC on September 1, 2004.   To prepare the CAC, Plaintiff
continued his investigation, including, among other things, hiring experts to analyze the potential
damages caused by Defendants' allegedly fraudulent conduct, and interviewing witnesses with
knowledge of the allegations to obtain the requisite specificity to plead fraud in the level of detail
required by the PSLRA.

13.      On November 4, 2004, Defendants filed a motion to dismiss the Class Action
Complaint, and Plaintiff filed his opposition on January 3, 2005.[4]  On September 27, 2005, the Court
issued an order granting in part Defendants' motion to dismiss the CAC by dismissing Counts III
and IV of the CAC related to statements made before October 29, 2002 and granted Plaintiff leave to
further amend the complaint.  Thus, the Court found that with respect to Plaintiff's 10b-5 claim, the
Class Period should begin on October 29, 2002 as opposed to April 18, 2002.

**C.      Class Certification**

14.      Plaintiff filed his motion for class certification on January 17, 2006.

15.      Although Defendants opposed that motion, by Order dated May 15, 2006, the Court
certified two classes: (a) a "10b-5" class consisting of all investors who purchased or otherwise
acquired MSN's common stock between October 29, 2002 and June 16, 2003, inclusive; and (b) a
"Section 11 Class" that includes all investors who acquired shares of MSN's common stock pursuant
or traceable to the IPO Registration Statement and Prospectus issued in connection with MSN's

---

Coughlin Stoia & Robbins, LLP, which is now known as Lerach Coughlin Stoia Geller Rudman &
Robbins LLP ("Lerach Coughlin").

[4] Plaintiff filed a Corrected Memorandum in Opposition to Motion to Dismiss Consolidated
Amended Class Action Complaint on January 31, 2005.

April 18, 2002 Initial Public Offering.  The certified Classes excluded Defendants, members of the Individual Defendants' family, any entity in which any Defendant has a controlling interest, the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such excluded party.

        16.     The Court also appointed Thomas Greene as class representative.

**D.**     **Discovery and Motion Practice**

        17.     Discovery then commenced, during which Defendants produced over 321,000 documents to Plaintiff.

        18.     In addition, Plaintiff served third-party subpoenas on, and received additional documents from numerous third parties.

        19.     Plaintiff, with his counsel, thoroughly reviewed all the produced documents.

        20.     Plaintiff, through his counsel, also conducted numerous depositions.

        21.     Each of the parties also retained and designated experts to testify concerning the damages, if any, caused by the Defendants' alleged wrongdoing.  At the same time, the parties engaged in discovery motion practice.

**E.**     **Damages**

        22.     As stated in the Notice the $5 million Settlement amount represents an average distribution of $0.45 per damaged share.[5]

        23.     The parties have estimated that Plaintiff and the Class suffered damages ranging from $1.12 to $4.01 per share.

---

[5] This average share amount is based on the Gross Settlement and does not account for attorneys' fees and costs.

III.    **THE SETTLEMENT**

A.    **Mediation and Settlement Negotiations**

24.    The parties mediated this case with Mark Buckstein on November 20, 2006.  During the mediation, which lasted an entire day, the parties agreed to a settlement after extensive negotiations.

B.    **Preparation of the Stipulation and Exhibits**

25.    Lead Counsel subsequently prepared a draft of the Stipulation and circulated it for review by and comments from Defendants' counsel.

26.    As part of the negotiations to prepare the Stipulation, there was substantial work done to prepare the Plan of Allocation described below, including consultation with a damages expert. The Plan of Allocation provides for different recoveries based on the dates of Class Members' purchase and sale of stock and is designed to maximize recovery for Class Members who purchased when the stock was most artificially inflated.

27.    Lead Counsel and Defendants' counsel signed the Stipulation on December 12, 2006, and filed it with the Court the same day.

28.    On December 13, 2006, the Court issued an Order granting the parties' Joint Motion for Preliminary Approval and Incorporated Memorandum of Law (the "Preliminary Order").  In the Preliminary Order, the Court preliminarily approved the Settlement, the form of the Notice and scheduled a final approval hearing, among other things.

C.    **Mailing and Publication of Notice of Settlement**

29.    The Preliminary Order directed Lead Counsel to cause the mailing of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and the Proof of Claim and Release ("Proof of Claim") to all potential Class Members identifiable with reasonable effort.

30.     The Preliminary Order also directed Lead Counsel to cause the Summary Notice of Settlement of Class Action ("Publication Notice") to be published in the national edition of *Investors Business Daily* and over the internet *via Business Wire* or *PR Newswire* within 10 days of mailing the Notice.

31.     As stated in the accompanying affidavit of Risa Neiman ("Neiman Aff."), attached hereto as Exhibit B, a representative from the Claims Administrator, RSM McGladrey, Inc., 647 packages containing a Notice of Pendency and Proposed Settlement of Class Action were mailed to potential Class Members on January 12, 2007.  (Astley Decl., Ex. B, Neiman Aff. ¶¶2-4).

32.     The Publication Notice was published in *PR Newswire* and *Investor's Business Daily* on January 19, 2007, in compliance with the Preliminary Order.  (Astley Decl., Ex. B, Neiman Aff. ¶5).

33.     The Notice provided that any requests for exclusion from the Class and any objections to the Settlement, the Plan of Allocation, and the application for attorneys' fees and reimbursement expenses were to have been postmarked by February 16, 2007.  To date, no objections have been filed, and no requests for exclusion were made.

D.     **Factors to Be Considered in Support of Settlement**

1.     **Counsel's Ability to Evaluate the Settlement**

34.     As a result of their investigation, the discovery process, motion practice, and mediation preparations, Lead Counsel was thoroughly informed as to the strengths and weaknesses of the claims and defenses and were in a position to fully appraise the benefits of a settlement now, as opposed to the risks and expenses of continued litigation.

35.     Lead Counsel is regularly engaged in complex federal civil litigation, particularly securities class actions.  The experience of Lead Counsel in handling securities cases allowed them

8

to identify the complex issues in this case and formulate effective strategies to prosecute it. The experience of Lead Counsel also gave them strong leverage in obtaining the best result for the Class.

36.     In the estimation of Lead Counsel, the compromise embodied in the Settlement, which was negotiated vigorously and at arm's length, represents an achievement in terms of a successful resolution of this complex class action.

**2.     The Settlement Was Fairly and Aggressively Negotiated by Counsel**

37.     The principal terms of the Settlement were fairly, honestly and aggressively negotiated by counsel for all parties.

38.     Throughout the negotiations, the parties were represented by counsel with vast experience in securities class actions. The Settlement is the result of an adversarial process designed to produce a fair and honest compromise.

**3.     Serious Questions of Law and Fact Placed the Likelihood of a More Beneficial Result in Significant Doubt**

39.     Another factor considered in assessing the merits of class action settlements is whether serious questions of law and fact exist, potentially placing a favorable outcome of the litigation in doubt. An evaluation of this factor also supports the conclusion that the Settlement is fair, reasonable and adequate.

40.     Throughout the litigation, although Lead Counsel believed that the allegations had significant merit, Defendants asserted arguably valid defenses. Indeed, Defendants argued, among other things, that Defendants' disclosures were adequate, and that they lacked scienter.

41.     Plaintiff recognized that he would have to expend additional, considerable resources to overcome Defendants' contentions.

42.     In assessing the merits of the Settlement, Lead Counsel considered the wide-ranging factual and legal questions that were disputed, including the scope of damages. Lead Counsel was

aware that many of the defenses that had been asserted had some possibility of success.  These uncertainties made a more favorable financial recovery for Plaintiff problematic, especially when weighed against the tangible and immediate benefits conferred by the Settlement.  In addition, Plaintiff was aware that continued litigation could deplete the Company's insurance policy, which could make recovering damages more difficult for the Class.  As a result, Lead Counsel felt that the immediate benefit of the Settlement could not be rejected, given the likely and significant recovery obstacles.

        **4.**      **The Parties' Judgment that the Settlement Is Fair and Reasonable Provides Additional Support for Approval of the Settlement**

43.      Another factor in considering whether to approve class action settlements is the judgment of the parties that the settlement is fair and reasonable.  As outlined above, the Settlement was the product of extensive negotiations between adversaries with significant experience in securities class action litigation.

**IV.**     **PLAN OF ALLOCATION**

44.      The "Net Settlement Fund" (the $5 million Settlement Amount, plus interest thereon, less all taxes, approved costs, fees and expenses) will be distributed to Class Members who submit valid, timely Proof of Claim forms ("Authorized Claimants") under the Plan of Allocation described below.

45.      The Plan of Allocation reflects an assessment of the damages that could have been recovered and Lead Counsel's assessment of the likelihood of establishing liability for various portions of the Class Period.

46.      The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all accepted claimants.

47.     Recognized Claims will be calculated for the purposes of settlement based on when the Claimant sold his or her shares.  Damages based on sale date are detailed in the Tables attached to the Astley Decl. as part of Exhibit B.  Table 1 indicates the damages that claimants with Section 11 claims will receive.  (Astley Decl., Ex. B).  Table 2 indicates the damages that claimants with Section 10b-5 claims will receive.  (Astley Decl., Ex. B).

48.     Class Members who do not submit acceptable Proofs of Claim will not share in the Settlement proceeds.  Class Members who neither submit a request for exclusion nor submit an acceptable Proof of Claim will nevertheless be bound by the Settlement and the Order and Final Judgment of the Court dismissing this litigation.

## V.     APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

49.     Lead Counsel seeks an award of attorneys' fees of 30 percent of the Gross Settlement Fund, a percentage that is within the range of fees awarded in this Circuit and District in similar cases. This fee is reasonable based on the quality of counsel's work and the substantial benefit obtained for the Class in light of the risks discussed above.

50.     As discussed above, Lead Counsel faced significant risks in pursuing the litigation. This was not a case where any recovery was assured. Compounding the risk, Lead Counsel has received no compensation during the litigation.  Lead Counsel's fees are totally contingent upon a successful result and an award by this Court.  Lead Counsel believes that the Settlement was primarily the result of their hard work, persistence and skill.

51.     Lead Counsel also requests reimbursement of the expenses they incurred in the prosecution of the litigation.  Submitted herewith is the Declaration of Stephen R. Astley in Support of Motion For Attorneys' Fees and Reimbursement of Expenses (the "Astley Fee Declaration"), which attests to the accuracy of, and provides the basis for, counsel's fees and expenses and is

11

attached hereto as Exhibit C. The Astley Fee Declaration includes lodestar and expense information for Lerach Coughlin. Lead Counsel dedicated 2,602.75 hours to this case, generating a lodestar of $1,046,811.25. (*Id.*) Plaintiff Greene seeks reimbursement of costs relating to this litigation. In his pursuit of this case, representing the Class, Plaintiff Greene incurred costs in the amount of $11,200-$14,000 for which the Court should award reimbursement.[6] Plaintiff Greene has submitted a declaration attesting to his efforts in this litigation and the expenses he incurred in the process, which is attached hereto as Exhibit D.

### A.  Factors to Be Considered in Support of the Requested Attorneys' Fees and Risks of Contingent Litigation

52.    The Litigation was undertaken by Lead Counsel on a completely contingent basis. Lead Counsel understood that they were embarking on complex, expensive and lengthy litigation with no guarantee of compensation for the enormous investment of time, money and effort the case would require.

53.    In undertaking the responsibility, Lead Counsel had to ensure that sufficient resources of attorneys were dedicated to the prosecution of the litigation and that funds were available to compensate staff and cover the considerable out-of-pocket costs a case such as this entails. Comparatively, lawyers that represent hourly, fee-paying clients require their clients to pay fees as the work is done, thereby generating revenue regularly as the case progresses. Such regular revenues were not available to Lead Counsel in this litigation.

---

[6] Plaintiff Greene's costs were calculated by multiplying his hourly rate of between $200 and $250 by the 56 hours he spent on the case, during which time he was not able to work on other matters. (Ex. D, ¶¶7-8).

54.     In a contingent practice involving complex cases lasting several years, firms must not only pay normal overhead expenses, but also must advance the expenses of litigation. With an average lag time of years for these cases to conclude, the financial burden on contingent counsel is far greater than on a firm that is paid on an ongoing basis.

### B.     Standing and Experience of Lead Counsel

55.     The experience of Lead Counsel is described in the attached Astley Fee Declaration. (Ex.C). Lead Counsel is among the most experienced and skilled practitioners representing plaintiffs in securities litigation. In fact, the quality of Lead Counsel was the subject of the Court's consideration during the motion for appointment of lead plaintiff.

### C.     Standing and Caliber of Opposition Counsel

56.     Defendants are represented by Kenny Nachwalter, P.A. and Willkie Farr & Gallager LLP, outstanding law firms whose attorneys are well recognized for their work in defending securities class actions, and who vigorously represented Defendants in this litigation.

### D.     The Risk of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk, Contingent Securities Cases

57.     In addition to the factors discussed above, there is a possibility of no recovery. A law firm handling complex, contingent litigation does not always win. Tens of thousands of hours are often expended in losing efforts.

58.     Lead Counsel are aware of many, hard-fought cases where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case or a decision of a judge or jury following a trial on the merits, excellent professional efforts produced no fee. Prior to filing the litigation, Plaintiffs had to consider the risk that it would be dismissed at the pleading stage. Indeed, since the passage of the PSLRA, many securities cases have been dismissed. *See, e.g., In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308 (M.D. Fla. 2002);

13

*In re Sunstar Healthcare Sec. Litig,* 173 F. Supp. 2d 1315 (M.D. Fla. 2001); *In re Columbia Labs., Inc. Sec. Litig,* 144 F. Supp. 2d 1362 (S.D. Fla. 2001); *In re Republic Servs., Inc. Sec. Litig.,* 134 F. Supp. 2d 1355 (S.D. Fla. 2001); *In re Technical Chems. Sec. Litig.,* No. 98-7334, 2000 WL 1222025 (S.D. Fla. July 3, 2000); *Ehlert v. Singer,* 85 F. Supp. 2d 1269 (M.D. Fla. 1999). In addition, many appellate courts have affirmed dismissals of securities cases. *See, e.g.; ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336 (5th Cir. 2002); *Suma v. Bailey Corp.,* 107 F.3d 64 (1st Cir. 1997); *Cross v. SummaFour,* 93 F.3d 987 (1st Cir. 1996); *Glassman v. Computervision Corp.,* 90 F.3d 617 (1st Cir. 1996); *Levitin v. Paine-Webber, Inc.,* 159 F.3d 698 (2d Cir. 1998); *Chill v. GE,* 101 F.3d 263 (2d Cir. 1996); *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609 (4th Cir. 1999); *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015 (5th Cir. 1996); *In re Comshare Inc. Sec. Litig.,* 183 F.3d 542 (6th Cir. 1999); *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922 (9th Cir. 1996); *Epstein v. Wash. Energy Co.,* 83 F.3d 1136 (9th Cir. 1996).

59.    Many appellate decisions affirming summary judgments and directed verdicts for defendants show that surviving a motion to dismiss is no guaranty of recovery. *E.g., Longman v. Food Lion, Inc.,* 197 F.3d 675 (4th Cir. 1999); *Donohoe v. Consol Operating & Prod Corp.,* 30 F.3d 907 (7th Cir. 1994); *Sailor v. N. States Power Co.,* 4 F.3d 610 (8th Cir. 1993); *Silver v. H&R Block,* 105 F.3d 394 (8th Cir. 1997); *Moorhead v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 949 F.2d 243 (8th Cir. 1991); *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407 (9th Cir. 1994); *McGonigle v. Combs,* 968 F.2d 810 (9th Cir. 1992). Moreover, even plaintiffs who succeed at trial may find their judgment overturned on appeal. *E.g., Backman v. Polaroid Corp.,* 910 F. 2d 10 (1st Cir. 1990) (en banc) (reversing plaintiffs' verdict and ordering entry of judgment for defendants); *Ward v. Succession of Freeman,* 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud); *Anixter v. Home-Stake Prod. Co.,* 77 F. 3d 1215 (10th Cir. 1996) (overturning plaintiffs'

14

verdict obtained after two decades of litigation); *Robbins v. Koger Props.*, 116 F. 3d 1441 (11th Cir. 1997) (same).

60.     The foregoing refutes any notion that commencement of a class action guarantees a settlement and a large fee.  It takes hard and diligent work by skilled counsel to develop facts and theories that will persuade defendants to enter into serious settlement negotiations.  If defendants believe they will prevail, they will likely litigate to the end, which presents a real risk.

61.     It is in the public interest to have experienced and able counsel enforcing the securities laws and regulations governing the duties of officers and directors of public companies. Vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain parity in representation with those available to large corporate interests.  If this important public policy is to be carried out, the courts must award fees which will adequately compensate private plaintiff's counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

## CONCLUSION

62.     For the reasons set forth herein and in the accompanying Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of Plan of Allocation, and Award of Attorneys' Fees and Reimbursement of Expenses, Lead Counsel respectfully submits that: (a) the Settlement is fair, reasonable and adequate, and should be approved; (b) the Plan of Allocation is a fair method for the distribution of the Net Settlement Fund among Class Members, and should also be approved; and (c) the application for attorneys' fees and reimbursement of expenses should be granted.

I declare under penalty of perjury that the above statements are true and correct. Executed this 23rd day of February, 2007.

Stephen R. Astley

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-80158-CIV-DIMITROULEAS

JOSEPH AND PATRICIA MARRARI, on )
behalf of themselves and all others )
similarly situated, )
                    )
      Plaintiffs, )
                    )
vs. )
                    )
MEDICAL STAFFING NETWORK )
HOLDINGS, INC., *et al.*, )
                    )
      Defendants. )
                    )
_____ )
                    )

## **FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE**

      This matter came before the Court for hearing pursuant to an Order of this Court, dated

_____, 2007, on the application of the Settling Parties for approval of the Settlement

set forth in the Stipulation of Settlement dated as of December 12, 2006 (the "Stipulation"). Due

and adequate notice of the settlement having been given as required in said Order, and the Court

having considered all papers filed and proceedings had herein and otherwise being fully

informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED,

ADJUDGED AND DECREED that:

      1.      This Judgment incorporates by reference the definitions in the Stipulation, and all

terms used herein shall have the same meanings as set forth in the Stipulation.

      2.      This Court has jurisdiction over the subject matter of the Litigation and over all

parties to the Litigation, including all Members of the Class.

3.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court certified a Class comprising all Persons who purchased or otherwise acquired Medical Staffing Network Holdings, Inc. common stock between October 29, 2002 and June 16, 2003, inclusive, and were damaged thereby, and/or all persons who acquired Medical Staffing Network Holdings, Inc. common stock pursuant or traceable to its Registration Statement and Prospectus issued in connection with its April 18, 2002 initial public offering, and were damaged thereby. Excluded from the Class are Defendants and members of each individual defendants' immediate family, any entity in which a Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party. Also excluded from the Class are those Persons who have submitted a valid request to be excluded from the Class pursuant to the Notice of Pendency of Class Action dated July 17, 2006 or who submit a valid and timely request to be excluded from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

4.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement set forth in the Stipulation, and the Exhibits thereto, and approves the Plan of Allocation set forth in the Notice, and finds that said settlement is, in all respects, fair, reasonable and adequate to, and is in the best interest of, the Lead Plaintiff, the Class and each of the Class Members. This Court further finds the Settlement set forth in the Stipulation is the result of arms' length negotiations between experienced counsel representing the interests of the Lead Plaintiff, the Class Members and the Defendants. Accordingly, the Settlement embodied in the Stipulation is hereby approved in all respects and shall be consummated in accordance with its terms and provisions. The Settling Parties are hereby directed to perform the terms of the Stipulation.

2

5.     Except as to any individual claim of those Persons (identified in Exhibit A-1 hereto) who have validly and timely requested exclusion from the Class, the Litigation as well as all of the Released Claims and Released Defendants' Claims are dismissed with prejudice. The parties are to bear their own costs, except as otherwise provided in the Stipulation.

6.     Upon the Effective Date hereof, and in consideration of (a) Defendants' agreement to pay (or have their insurance companies pay) the amount of $5,000,000.00 (the "Cash Settlement Amount"), and (b) Defendants' and their Released Parties' release of Defendants' Released Claims, as set forth in the Stipulation, Lead Plaintiff and each Class Member (and their Released Parties, as defined in the Stipulation) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against Defendants, and each of them, and each of their Released Parties, whether or not such Class Member executes and delivers a Proof of Claim and shall refrain from instituting, commencing, prosecuting, or cooperating with any person to institute, commence or prosecute, either directly or indirectly, representatively, derivatively, or in any other capacity, any and all Released Claims.

7.     All Class Members who are not listed on Exhibit A-1 hereto are hereby forever barred and enjoined from prosecuting the Released Claims against Defendants and their Released Parties.

8.     Upon the Effective Date hereof, and in consideration of the releases to be provided by Lead Plaintiff, the Class, and all members thereof, Defendants, and each of them (and their Released Parties as defined in the Stipulation), shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever released, relinquished and discharged each and all of the Lead Plaintiff, Class Members, Plaintiff's Lead Counsel,

3

Plaintiffs' Counsel and each of them, and each of their Released Parties from all Released Defendants' Claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims.

9.      The Notice of Pendency and Proposed Settlement of Class Action and Summary Notice given to the Class was the best notice practicable under the circumstances, including individual notice to all Members of the Class who could be identified through reasonable effort. Said Notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Stipulation and the Final Approval Hearing thereon, to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

10.     The Court hereby approves the Plan of Allocation as set forth in the Notice distributed to the Class.

11.     Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:  (a) is or may be deemed to be or may be used as an admission, concession or evidence of, the validity or invalidity of any Released Claims, the truth or falsity of any fact alleged by Lead Plaintiff and the Class, the sufficiency or deficiency of any defense that has been or could have been asserted in the Litigation, or of any alleged wrongdoing, liability, negligence, fault of the Defendants and their Released Parties, or any of them; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or misrepresentation or omission with respect to any statement or written document attributed to, approved or made by any of the Defendants, or any of their Released Parties, in any civil, criminal or administrative proceeding

4

in any court, administrative agency or other tribunal; (c) is or may be deemed to be or shall be used, offered or received against the Defendants, Lead Plaintiff, the Class and their respective Released Parties, or each or any of them, as an admission, concession or evidence of, the validity or invalidity of any of the Released Defendants' Claims, the infirmity or strength of any claims raised in the Litigation, the truth or falsity of any fact alleged by Defendants, or the availability or lack of availability of meritorious defenses to the claims raised in the Litigation; (d) is or may be deemed to be or shall be construed as or received in evidence as an admission or concession against the Parties and their Released Parties, or each or any of them, that any of the Lead Plaintiff's claims are with or without merit, that damages recoverable under the Lead Plaintiff's operative complaint would have been greater or less than the Cash Settlement Amount or that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount which could have or would have been recovered after trial. Any of the Settling Parties or any of their Released Parties may file the Stipulation and/or this Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of this Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) determination of applications for attorneys' fees and expenses in the Litigation; and (d) all Parties hereto for the purpose of construing, enforcing and administering the Stipulation.

13.     The Court finds that during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

14.     Plaintiff's Lead Counsel are awarded fees in the amount of _____% of the Settlement Fund, plus reimbursement of expenses in the amount of $_____, plus interest to the same extent that interest has been earned on the Settlement Fund, both to be paid from the Settlement Fund pursuant to the terms of the Stipulation.   Plaintiff's Lead Counsel shall thereafter allocate the attorneys' fees among Plaintiffs' Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Litigation.

15.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation or in the event that the Settlement Fund, or any portion thereof, is returned to the Defendants, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

IT IS SO ORDERED this _____ day of _____, 2007.


_____
HONORABLE WILLIAM P. DIMITROULEAS
UNITED STATES DISTRICT JUDGE

cc:     Counsel of record

# EXHIBIT 1

The following individuals have filed timely and valid requests for exclusion from the Class and are therefore Excluded Persons:

1.    Richard Bryant
2.    William and Ellen Kurtz
3.    Andrew and Pamela Goldwyn

# EXHIBIT B

MEDICAL STAFFING NETWORK
HOLDINGS, INC. LITIGATION

AFFIDAVIT OF MAILING
AND
PUBLICATION



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-80158-CIV-DIMITROULEAS

——————————————————— X
                           :

JOSEPH AND PATRICIA MARRARI, on    :
behalf of themselves and all others      :
similarly situated,                    :
                           :
         Plaintiffs,             :
                           :
    vs.                          :
                           :
MEDICAL STAFFING NETWORK        :
HOLDINGS, INC., *et al.*,           :
                           :
         Defendants.       :
——————————————————— X

AFFIDAVIT OF RSM MCGLADREY, INC.
IN CONNECTION WITH NOTICE BY MAILING AND PUBLICATION

STATE OF PENNSYLVANIA     :     SS:
COUNTY OF MONTGOMERY

       BE IT KNOWN that appeared before me Risa Neiman who being duly sworn deposes and says that:

       1.    She is an employee of RSM McGladrey, Inc. which was appointed to aid in giving notice to the Notice Class.

       2.    Pursuant to the Order of the Court dated December 13, 2006, a mailing was made of the attached material marked "Exhibit A" to the 28 individuals whose names appear on the records of Defendants.  If the Court desires, a copy of this list will be provided.

       3.    All of these items were mailed, via U.S. First Class Mail, on January 12, 2007, by James A. Lerner, Vice-President at Pearl Pressman Liberty, as per the attached affidavit that appears in the item marked "Exhibit B".

       4.    A mailing was made of the attached material marked "Exhibit A" to 619 nominees and brokers whose names are contained on an internal list maintained by RSM McGladrey, Inc.  These items were also mailed, via U.S. First Class Mail, on January 12, 2007, by James A. Lerner, Vice-President at Pearl Pressman Liberty, as per the attached affidavit which appears in the item marked "Exhibit B".

       5.    Pursuant to the Order of the Court dated December 13, 2006, the Summary Notice appeared once in the national newswire <u>PR Newswire</u> and in the <u>Investor's Business Daily</u> on January 19, 2007, in the format that appears in the item marked "Exhibit C".

SWORN TO AND SUBSCRIBED TO              _Risa Neiman_
before me this 25th day of
_____, 2007.

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lisa M. Davis, Notary Public
Whitpain Twp., Montgomery County
My Commission Expires Aug. 6, 2009

Member, Pennsylvania Association of Notaries

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 04-80158-CIV-DIMITROULEAS**

```
                                                   X
JOSEPH AND PATRICIA MARRARI, on                    :
behalf of themselves and all others                :
similarly situated,                                :
                                                   :
            Plaintiffs,                             :
                                                   :
vs.                                                :
                                                   :
MEDICAL STAFFING NETWORK                            :
HOLDINGS, INC., et al.,                             :
                                                   :
            Defendants.                             :
                                                   X
```

# NOTICE OF PENDENCY AND
# PROPOSED SETTLEMENT OF CLASS ACTION

*IF YOU PURCHASED SECURITIES OF MEDICAL STAFFING NETWORK HOLDINGS, INC. BETWEEN APRIL 18, 2002 AND JUNE 16, 2003, INCLUSIVE, (THE "CLASS") YOU COULD GET A PAYMENT FROM A CLASS ACTION SETTLEMENT.*

A federal court authorized this Notice. This is not a solicitation from a lawyer.

**Settlement Fund:** $5,000,000 in cash. If you are in the Class, your recovery will depend on the number of securities you purchased and the timing of your purchases and any sales. Depending on the number of eligible shares that participate in the settlement and when those shares were purchased and sold, the estimated average recovery per share of common stock for members of the Class will be approximately $0.45 before deduction of Court-approved fees and expenses.

**Reasons for Settlement:** The Settlement resolves a lawsuit by Lead Plaintiff alleging that Medical Staffing Network Holdings, Inc. ("MSN"), and five of its top officers and/or directors Robert J. Adamson, Kevin S. Little, Joel Ackerman, David J. Wenstrup, and Scott F. Hilinski, in connection with MSN's April 18, 2002 initial public offering, disseminated to the investing public a Registration Statement and Prospectus that contained materially misleading statements and/or omissions of material facts. Additionally, the lawsuit alleges that, between October 29, 2002 and June 16, 2003, MSN, Adamson, and Little knowingly or recklessly made material misrepresentations and/or failed to disclose material facts to the investing public. Defendants deny the allegations in the lawsuit. The Settlement provides a substantial recovery now and avoids the costs and risks associated with continued litigation, including the danger of no recovery for the Class.

**If the Case Had Not Settled:** Continuing with the case could have resulted in dismissal or loss at trial. The parties do not agree on the amount of money that could have been obtained if the Class prevailed at trial. Lead Plaintiff and Defendants disagree about: (1) the method for determining whether MSN's securities was artificially inflated during the relevant period; (2) the amount of any such inflation; (3) the extent that various facts alleged by Lead Plaintiff were materially false or misleading; (4) the extent that various facts alleged by Lead Plaintiff influenced the trading price of MSN securities during the relevant period; and (5) whether the facts alleged were material, false, misleading or otherwise actionable under the securities laws.

**Attorneys' Fees and Expenses:** Court-appointed Plaintiff's Lead Counsel have not received any payment for their work investigating the facts, conducting this Litigation and negotiating the settlement on behalf of the Class. Plaintiff's Lead Counsel will ask the Court for attorneys' fees of 30% of the Settlement Fund and reimbursement of out-of-pocket expenses not to exceed $250,000.00 to be paid from the Settlement Fund, plus interest. If the above amounts are requested and approved by the Court, the average payment per damaged share of MSN stock will be $0.29. In addition, Lead Plaintiff will be seeking an expense award as permitted by law.

**Court Hearing on Fairness of Settlement:** March 2, 2007. The purpose of the hearing will be to determine (1) whether the settlement is fair, reasonable and adequate to members of the Class, (2) whether the proposed plan to distribute the settlement proceeds is fair, reasonable and adequate, (3) whether the application by Plaintiff's Lead Counsel for an award of attorneys' fees and expenses, and (4) whether the application by Lead Plaintiff for an award of expenses should be approved.

**Contact the Parties Below to Obtain More Information About the Settlement:**

Claims Administrator:

*Medical Staffing Network Holdings, Inc. Securities Litigation*
Claims Administrator
c/o RSM McGladrey, Inc.
P.O. Box 1607
Blue Bell, PA 19422
(800) 222-2760

Plaintiff's Lead Counsel:

Jack Reise
Lerach Coughlin Stoia Geller
  Rudman & Robbins LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(888) 262-3131

- Your legal rights are affected whether you act or don't act. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. The deadline for submitting a claim is May 14, 2007. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to participate in another lawsuit against the Defendants relating to the legal claims in this lawsuit. The deadline for requesting exclusion is February 16, 2007. |
| **OBJECT** | You may write to the Court if you don't like this settlement. The deadline for objection is February 16, 2007. |
| **GO TO A HEARING** | You may ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. |

- These rights and options are explained in this Notice.

- The Court in charge of this case must decide whether to approve the settlement. Payments will be made if the Court approves the settlement and, if there are any appeals, after appeals are resolved. Please be patient.

## BASIC INFORMATION

### 1. Why Did I Get This Notice Package?

You or someone in your family may have purchased MSN securities between April 18, 2002 and June 16, 2003.

You received this Notice because you have a right to know about a proposed settlement of a consolidated securities class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves it and after any objections or appeals are resolved, the Claims Administrator appointed by the Court will make the payments that the settlement allows.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court Southern District of Florida, and the case is known as *Joseph and Patricia Marrari v. Medical Staffing Network Holdings, Inc., et al.,* Case No. 04-80158-CIV-Dimitrouleas. The Person who sued is called the Lead Plaintiff, and the company and the individuals he sued, MSN, Robert J. Adamson, Kevin S. Little, Joel Ackerman, David J. Wenstrup, and Scott F. Hilinski are called the Defendants.

### 2. What is This Lawsuit About?

This case was brought as a securities class action alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. Lead Plaintiff alleges that, in connection with MSN's April 18, 2002 initial public offering, Defendants disseminated to the investing public a Registration Statement and Prospectus that contained materially misleading statements and/or omissions of material facts. Additionally, Lead Plaintiff alleges that during the Class Period, MSN, Adamson, and Little knowingly or recklessly made material misrepresentations and/or failed to disclose material facts to the investing public. Specifically, Lead Plaintiff alleges that the Registration Statement and Prospectus misled the investing public by hyping MSN's *de novo* program as a financial success, when, in Plaintiff's view, the program was a financial failure. Additionally, Lead Plaintiff alleges that the Defendants misled investors during the Class Period by continuing to tout the *de novo* program, and misrepresenting that the Company enjoyed unparalleled success. Lead Plaintiff asserts that these actions resulted in the artificial inflation of the price of MSN's securities between April 18, 2002 and June 16, 2003.

2

Defendants deny each and all of the claims and contentions alleged by Lead Plaintiff. Defendants expressly deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Defendants also deny, *inter alia*, the allegations that the Lead Plaintiff or the Class have suffered damage, that Defendants knowingly or recklessly made material misrepresentations, nondisclosures or otherwise, or that Lead Plaintiff or the Class were harmed by the conduct alleged in the Complaint.

### 3. Why Is This a Class Action?

In a class action, one or more people called class representatives sue on behalf of people who have similar claims. In this instance the Court-appointed Lead Plaintiff, Thomas Greene, has been approved by the Court to be the representative for a certified class. One case resolves the issues for all Class Members, except for those who exclude themselves from the Class. The Honorable William P. Dimitrouleas is in charge of this class action.

### 4. Why Is There a Settlement?

The Court did not decide in favor of Lead Plaintiff or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and eligible Class Members who make a valid claim will get compensation. Lead Plaintiff and his attorneys think the settlement is a very good result for all Class Members. Defendants deny liability and deny Lead Plaintiff and members of the Class suffered any damage. Further, assuming Lead Plaintiff prevailed at trial, any favorable verdict would have likely been the subject of appeal and the Class's recovery would have remained uncertain and further delayed.

## WHO IS IN THE SETTLEMENT?

To see if you will get money from this settlement, you first have to determine if you are a Class Member.

### 5. How Do I Know if I Am Part of the Settlement?

The Class includes all Persons who purchased or otherwise acquired Medical Staffing Network Holdings, Inc. common stock between October 29, 2002 and June 16, 2003, inclusive, and were damaged thereby, and/or all persons who acquired Medical Staffing Network Holdings, Inc. common stock pursuant or traceable to its Registration Statement and Prospectus issued in connection with its April 18, 2002 initial public offering, and were damaged thereby.

### 6. What Are the Exceptions to Being Included?

Excluded from the Class are Defendants and members of each individual defendants' immediate family, any entity in which a Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party. Also excluded from the Class are those Persons who submit a valid and timely request to be excluded from the Class pursuant to this Notice of Pendency and Proposed Settlement of Class Action.

### 7. I'm Still Not Sure if I Am Included.

If you are still not sure whether you are included, you can ask for free help. You can call the Claims Administrator at 800-222-2760 for more information. Or you can fill out and return the claim form described in question 10, to see if you qualify.

## THE SETTLEMENT BENEFITS — WHAT YOU GET

### 8. What Does the Settlement Provide?

Defendants have agreed to pay $5 million in cash to be divided among eligible Class Members who send in valid claim forms, after payment of Court-approved attorneys' fees and expenses and the costs of claims administration, including the costs of printing and mailing this Notice and the cost of publishing newspaper notice (the "Net Settlement Fund").

### 9. How Much Will My Payment Be?

Your share of the fund will depend on the number of valid claim forms that Class Members send in and how many MSN securities you purchased during the relevant period and when you bought and sold them.

### Section 11 Claimants

Section 11 claims shall be available for all persons that purchased their shares pursuant to the initial public offering or purchased in the open market on or before June 6, 2002, and sold their shares on or after October 7, 2002, or have continued to hold their shares. It was determined by analysis of certificate records that all shares purchased in the open market on or before June 6, 2002, were directly traceable to MSN's initial public offering. Damages shall be determined based on the date of sale in accordance with Table 1. Table 1 is adjusted to reflect that portion of the decline in the share price of Medical Staffing below the initial offering price of $19.00 per share that cannot be explained by market and industry forces and other events (unrelated to the allegations in the lawsuit).

3

## Table 1: Damages per Share for Section 11 Claims at the Date of Sale

| Date | Damage on Sale (in $ per share) | Date | Damage on Sale (in $ per share) | Date | Damage on Sale (in $ per share) | Date | Damage on Sale (in $ per share) | Date | Damage on Sale (in $ per share) |
|---|---|---|---|---|---|---|---|---|---|
| 10/07/02 | 0.28 | 01/16/03 | - | 04/29/03 | 2.89 | 08/07/03 | 3.19 | 11/14/03 | 1.19 |
| 10/08/02 | 2.65 | 01/17/03 | - | 04/30/03 | 3.28 | 08/08/03 | 3.10 | 11/17/03 | 1.23 |
| 10/09/02 | 2.06 | 01/21/03 | - | 05/01/03 | 3.30 | 08/11/03 | 2.95 | 11/18/03 | 1.29 |
| 10/10/02 | 1.60 | 01/22/03 | - | 05/02/03 | 3.10 | 08/12/03 | 2.78 | 11/19/03 | 1.28 |
| 10/11/02 | 0.61 | 01/23/03 | - | 05/05/03 | 2.91 | 08/13/03 | 2.75 | 11/20/03 | 1.25 |
| 10/14/02 | 1.81 | 01/24/03 | - | 05/06/03 | 2.48 | 08/14/03 | 2.53 | 11/21/03 | 1.30 |
| 10/15/02 | 1.68 | 01/27/03 | - | 05/07/03 | 2.61 | 08/15/03 | 2.48 | 11/24/03 | 1.11 |
| 10/16/02 | 1.81 | 01/28/03 | - | 05/08/03 | 2.54 | 08/18/03 | 2.74 | 11/25/03 | 1.20 |
| 10/17/02 | 1.19 | 01/29/03 | - | 05/09/03 | 2.36 | 08/19/03 | 2.55 | 11/26/03 | 1.13 |
| 10/18/02 | 0.55 | 01/30/03 | - | 05/12/03 | 2.30 | 08/20/03 | 2.58 | 11/28/03 | 1.15 |
| 10/21/02 | 0.39 | 01/31/03 | - | 05/13/03 | 2.80 | 08/21/03 | 2.45 | 12/01/03 | 1.20 |
| 10/22/02 | - | 02/03/03 | 0.10 | 05/14/03 | 2.76 | 08/22/03 | 2.47 | 12/02/03 | 1.14 |
| 10/23/02 | - | 02/04/03 | 0.34 | 05/15/03 | 2.66 | 08/25/03 | 2.49 | 12/03/03 | 1.12 |
| 10/24/02 | - | 02/05/03 | 0.65 | 05/16/03 | 2.98 | 08/26/03 | 2.45 | 12/04/03 | 1.21 |
| 10/25/02 | - | 02/06/03 | 0.96 | 05/19/03 | 3.24 | 08/27/03 | 2.44 | 12/05/03 | 1.24 |
| 10/28/02 | - | 02/07/03 | 1.25 | 05/20/03 | 3.18 | 08/28/03 | 2.63 | 12/08/03 | 1.28 |
| 10/29/02 | 0.17 | 02/10/03 | 1.13 | 05/21/03 | 3.25 | 08/29/03 | 2.49 | 12/09/03 | 1.27 |
| 10/30/02 | - | 02/11/03 | 1.30 | 05/22/03 | 3.42 | 09/02/03 | 2.48 | 12/10/03 | 1.29 |
| 10/31/02 | - | 02/12/03 | 1.33 | 05/23/03 | 3.42 | 09/03/03 | 2.47 | 12/11/03 | 1.18 |
| 11/01/02 | - | 02/13/03 | 1.42 | 05/27/03 | 3.09 | 09/04/03 | 2.24 | 12/12/03 | 1.13 |
| 11/04/02 | - | 02/14/03 | 2.25 | 05/28/03 | 3.36 | 09/05/03 | 1.97 | 12/15/03 | 1.17 |
| 11/05/02 | - | 02/18/03 | 2.17 | 05/29/03 | 3.02 | 09/08/03 | 2.05 | 12/16/03 | 1.24 |
| 11/06/02 | - | 02/19/03 | 2.07 | 05/30/03 | 3.00 | 09/09/03 | 2.08 | 12/17/03 | 1.34 |
| 11/07/02 | - | 02/20/03 | 1.82 | 06/02/03 | 2.89 | 09/10/03 | 2.28 | 12/18/03 | 1.04 |
| 11/08/02 | - | 02/21/03 | 1.43 | 06/03/03 | 3.12 | 09/11/03 | 2.36 | 12/19/03 | 1.03 |
| 11/11/02 | - | 02/24/03 | 1.31 | 06/04/03 | 3.13 | 09/12/03 | 2.51 | 12/22/03 | 0.98 |
| 11/12/02 | - | 02/25/03 | 1.48 | 06/05/03 | 3.10 | 09/15/03 | 2.32 | 12/23/03 | 1.02 |
| 11/13/02 | - | 02/26/03 | 0.47 | 06/06/03 | 3.17 | 09/16/03 | 2.67 | 12/24/03 | 0.87 |
| 11/14/02 | - | 02/27/03 | 0.59 | 06/09/03 | 2.98 | 09/17/03 | 2.67 | 12/26/03 | 0.93 |
| 11/15/02 | - | 02/28/03 | 0.72 | 06/10/03 | 2.84 | 09/18/03 | 2.67 | 12/29/03 | 0.75 |
| 11/18/02 | - | 03/03/03 | 1.22 | 06/11/03 | 2.23 | 09/19/03 | 2.67 | 12/30/03 | 0.76 |
| 11/19/02 | - | 03/04/03 | 1.75 | 06/12/03 | 2.26 | 09/22/03 | 2.67 | 12/31/03 | 0.75 |
| 11/20/02 | - | 03/05/03 | 0.92 | 06/13/03 | 2.30 | 09/23/03 | 2.67 | 01/02/04 | 0.71 |
| 11/21/02 | - | 03/06/03 | 1.06 | 06/16/03 | 2.36 | 09/24/03 | 2.67 | 01/05/04 | 0.59 |
| 11/22/02 | - | 03/07/03 | 1.06 | 06/17/03 | 3.09 | 09/25/03 | 2.67 | 01/06/04 | 0.66 |
| 11/25/02 | - | 03/10/03 | 1.34 | 06/18/03 | 3.23 | 09/26/03 | 2.67 | 01/07/04 | 0.69 |
| 11/26/02 | - | 03/11/03 | 1.73 | 06/19/03 | 3.28 | 09/29/03 | 2.67 | 01/08/04 | 0.68 |
| 11/27/02 | - | 03/12/03 | 1.64 | 06/20/03 | 3.37 | 09/30/03 | 2.67 | 01/09/04 | 0.73 |
| 11/29/02 | - | 03/13/03 | 1.77 | 06/23/03 | 3.49 | 10/01/03 | 1.73 | 01/12/04 | 0.76 |
| 12/02/02 | - | 03/14/03 | 1.74 | 06/24/03 | 3.30 | 10/02/03 | 1.72 | 01/13/04 | 0.85 |
| 12/03/02 | - | 03/17/03 | 1.75 | 06/25/03 | 3.15 | 10/03/03 | 1.63 | 01/14/04 | 0.92 |
| 12/04/02 | - | 03/18/03 | 1.64 | 06/26/03 | 3.35 | 10/06/03 | 1.63 | 01/15/04 | 0.87 |
| 12/05/02 | - | 03/19/03 | 1.57 | 06/30/03 | 3.29 | 10/07/03 | 1.65 | 01/16/04 | 0.86 |
| 12/06/02 | - | 03/20/03 | 1.73 | 07/01/03 | 3.51 | 10/08/03 | 1.62 | 01/20/04 | 0.94 |
| 12/09/02 | - | 03/21/03 | 1.10 | 07/02/03 | 3.31 | 10/09/03 | 1.62 | 01/21/04 | 0.81 |
| 12/10/02 | - | 03/24/03 | 1.29 | 07/03/03 | 3.47 | 10/10/03 | 1.63 | 01/22/04 | 0.88 |
| 12/11/02 | - | 03/25/03 | 0.69 | 07/07/03 | 3.33 | 10/13/03 | 1.69 | 01/23/04 | 0.80 |
| 12/12/02 | - | 03/26/03 | 1.09 | 07/08/03 | 3.36 | 10/14/03 | 1.61 | 01/26/04 | 0.74 |
| 12/13/02 | - | 03/27/03 | 0.85 | 07/09/03 | 3.31 | 10/15/03 | 1.62 | 01/27/04 | 0.81 |
| 12/16/02 | - | 03/28/03 | 0.98 | 07/10/03 | 3.17 | 10/16/03 | 1.56 | 01/28/04 | 0.91 |
| 12/17/02 | - | 03/31/03 | 1.45 | 07/11/03 | 3.39 | 10/17/03 | 1.47 | 01/29/04 | 1.09 |
| 12/18/02 | - | 04/01/03 | 1.73 | 07/14/03 | 3.38 | 10/20/03 | 1.47 | 01/30/04 | 0.89 |
| 12/19/02 | - | 04/02/03 | 1.63 | 07/15/03 | 3.49 | 10/21/03 | 1.46 | 02/02/04 | 0.92 |
| 12/20/02 | - | 04/03/03 | 1.68 | 07/16/03 | 3.55 | 10/22/03 | 1.45 | 02/03/04 | 1.04 |
| 12/23/02 | - | 04/04/03 | 1.99 | 07/17/03 | 3.51 | 10/23/03 | 1.43 | 02/04/04 | 1.12 |
| 12/24/02 | - | 04/07/03 | 2.53 | 07/18/03 | 3.70 | 10/24/03 | 1.54 | 02/05/04 | 1.45 |
| 12/26/02 | - | 04/08/03 | 2.89 | 07/21/03 | 3.67 | 10/27/03 | 1.70 | 02/06/04 | 1.37 |
| 12/27/02 | - | 04/09/03 | 3.32 | 07/22/03 | 3.73 | 10/28/03 | 1.70 | 02/09/04 | 1.25 |
| 12/30/02 | - | 04/10/03 | 3.13 | 07/23/03 | 3.79 | 10/29/03 | 1.58 | 02/10/04 | 1.22 |
| 12/31/02 | - | 04/11/03 | 3.07 | 07/24/03 | 3.74 | 10/30/03 | 1.65 | 02/11/04 | 1.27 |
| 01/02/03 | - | 04/14/03 | 2.83 | 07/25/03 | 3.73 | 10/31/03 | 1.71 | 02/12/04 | 1.44 |
| 01/03/03 | - | 04/15/03 | 2.77 | 07/28/03 | 3.76 | 11/03/03 | 1.77 | 02/13/04 | 1.50 |
| 01/06/03 | - | 04/16/03 | 3.02 | 07/29/03 | 3.71 | 11/04/03 | 1.71 | 02/17/04 | 1.50 |
| 01/07/03 | - | 04/17/03 | 2.92 | 07/30/03 | 3.78 | 11/05/03 | 1.73 | 02/18/04 | 1.28 |
| 01/08/03 | - | 04/21/03 | 3.11 | 07/31/03 | 3.23 | 11/06/03 | 1.58 | 02/19/04 | 1.31 |
| 01/09/03 | - | 04/22/03 | 3.16 | 08/01/03 | 3.33 | 11/07/03 | 1.39 | 02/20/04 | 1.28 |
| 01/10/03 | - | 04/23/03 | 2.81 | 08/05/03 | 2.78 | 11/10/03 | 1.26 | Held or Sold after 2/20/04 | |
| 01/13/03 | - | 04/24/03 | 2.66 | 08/05/03 | 2.78 | 11/11/03 | 1.35 | | |
| 01/14/03 | - | 04/25/03 | 2.79 | 08/06/03 | 3.20 | 11/12/03 | 1.38 | 2/20/04 | 1.28 |
| 01/15/03 | - | 04/28/03 | 2.69 | | | 11/13/03 | 1.31 | | |

4

**Rule 10b-5 Claimants**

Rule 10b-5 claims shall be available for all persons that purchased their shares in the open market on or after October 30, 2002, and on or before June 16, 2003, and sold their shares on or after January 31, 2003, or have continued to hold their shares. Damages per share shall be determined based on the inflation in the share price at the date of purchase minus the inflation in share price at the date of sale. Inflation in the share price shall be determined by the price paid or received in each transaction multiplied by the inflation percentage applicable to the transaction date as set forth in Table 2. Table 2 is adjusted to reflect that portion of the declines in the share price of Medical Staffing that can be associated with events revealing corrective information.

### Table 2: Inflation as a Percentage of the Share Price During the Rule 10b-5 Class Period

| Period | Start Date | End Date | Inflation Percentage |
|--------|-----------|----------|---------------------|
| 1 | 10/30/02 | 11/14/02 | 28.4% |
| 2 | 11/15/02 | 01/30/03 | 31.9% |
| 3 | 01/31/03 | 02/02/03 | 29.1% |
| 4 | 02/03/03 | 02/04/03 | 27.2% |
| 5 | 02/05/03 | 02/05/03 | 24.6% |
| 6 | 02/06/03 | 02/11/03 | 28.4% |
| 7 | 02/12/03 | 02/12/03 | 30.9% |
| 8 | 02/13/03 | 02/13/03 | 28.9% |
| 9 | 02/14/03 | 02/17/03 | 26.3% |
| 10 | 02/18/03 | 02/18/03 | 24.3% |
| 11 | 02/19/03 | 02/19/03 | 25.5% |
| 12 | 02/20/03 | 02/20/03 | 26.6% |
| 13 | 02/21/03 | 02/23/03 | 29.1% |
| 14 | 02/24/03 | 03/03/03 | 30.6% |
| 15 | 03/04/03 | 04/06/03 | 27.7% |
| 16 | 04/07/03 | 04/07/03 | 24.3% |
| 17 | 04/08/03 | 04/08/03 | 22.0% |
| 18 | 04/09/03 | 04/21/03 | 14.3% |
| 19 | 04/22/03 | 05/12/03 | 13.0% |
| 20 | 05/13/03 | 06/05/03 | 0.1% |
| 21 | 06/06/03 | 06/08/03 | 0.0% |
| 22 | 06/09/03 | 06/09/03 | 0.9% |
| 23 | 06/10/03 | 06/10/03 | 3.9% |
| 24 | 06/11/03 | 06/11/03 | 17.0% |
| 25 | 06/12/03 | 06/12/03 | 14.7% |
| 26 | 06/13/03 | 06/15/03 | 13.1% |
| 27 | 06/16/03 | 06/16/03 | 11.8% |
| 28 | 06/17/03 | Current | 0.0% |

Damages per share shall be further limited in accordance with the Private Securities Litigation Reform Act of 1995 by the following limitations: (i) If a share was sold prior to June 16, 2003, damages per share shall not exceed the difference between the purchase price and the selling price; (ii) If a share was sold on or between June 17 and September 15, 2003, then damages per share shall not exceed the purchase price minus the average closing price on the date of sale as set forth in Table 3; and (iii) If a share was not sold before September 16, 2003, then damages per share shall not exceed the purchase price per share minus $7.72.

## Table 3: Average Closing Prices for the 90 Days After the Class Period

| Sale Date | Closing Price | Average Closing Price Since 6/17/03 | Sale Date | Closing Price | Average Closing Price Since 6/17/03 | Sale Date | Closing Price | Average Closing Price Since 6/17/03 |
|---|---|---|---|---|---|---|---|---|
| 6/17/2003 | 7.41 | 7.41 | 7/17/2003 | 7.21 | 7.25 | 8/15/2003 | 8.30 | 7.36 |
| 6/18/2003 | 7.30 | 7.36 | 7/18/2003 | 7.01 | 7.24 | 8/18/2003 | 8.05 | 7.37 |
| 6/19/2003 | 7.21 | 7.31 | 7/21/2003 | 7.02 | 7.23 | 8/19/2003 | 8.29 | 7.39 |
| 6/20/2003 | 7.16 | 7.27 | 7/22/2003 | 7.00 | 7.22 | 8/20/2003 | 8.27 | 7.41 |
| 6/23/2003 | 7.00 | 7.22 | 7/23/2003 | 6.93 | 7.21 | 8/21/2003 | 8.40 | 7.43 |
| 6/24/2003 | 7.20 | 7.21 | 7/24/2003 | 6.99 | 7.21 | 8/22/2003 | 8.32 | 7.45 |
| 6/25/2003 | 7.34 | 7.23 | 7/25/2003 | 7.00 | 7.20 | 8/25/2003 | 8.31 | 7.47 |
| 6/26/2003 | 7.20 | 7.23 | 7/28/2003 | 7.00 | 7.19 | 8/26/2003 | 8.35 | 7.49 |
| 6/27/2003 | 7.25 | 7.23 | 7/29/2003 | 7.08 | 7.19 | 8/27/2003 | 8.35 | 7.50 |
| 6/30/2003 | 7.00 | 7.21 | 7/30/2003 | 6.96 | 7.18 | 8/28/2003 | 8.20 | 7.52 |
| 7/1/2003 | 7.14 | 7.20 | 7/31/2003 | 7.58 | 7.19 | 8/29/2003 | 8.50 | 7.54 |
| 7/2/2003 | 7.23 | 7.20 | 8/1/2003 | 7.45 | 7.20 | 9/2/2003 | 8.52 | 7.55 |
| 7/3/2003 | 7.05 | 7.19 | 8/4/2003 | 7.91 | 7.22 | 9/3/2003 | 8.53 | 7.57 |
| 7/7/2003 | 7.29 | 7.20 | 8/5/2003 | 7.93 | 7.24 | 9/4/2003 | 8.78 | 7.59 |
| 7/8/2003 | 7.35 | 7.21 | 8/6/2003 | 7.50 | 7.25 | 9/5/2003 | 9.01 | 7.62 |
| 7/9/2003 | 7.41 | 7.22 | 8/7/2003 | 7.50 | 7.26 | 9/8/2003 | 8.96 | 7.64 |
| 7/10/2003 | 7.52 | 7.24 | 8/8/2003 | 7.59 | 7.26 | 9/9/2003 | 8.95 | 7.66 |
| 7/11/2003 | 7.36 | 7.25 | 8/11/2003 | 7.75 | 7.28 | 9/10/2003 | 8.71 | 7.68 |
| 7/14/2003 | 7.41 | 7.25 | 8/12/2003 | 7.99 | 7.29 | 9/11/2003 | 8.65 | 7.70 |
| 7/15/2003 | 7.30 | 7.26 | 8/13/2003 | 8.01 | 7.31 | 9/12/2003 | 8.50 | 7.71 |
| 7/16/2003 | 7.25 | 7.26 | 8/14/2003 | 8.25 | 7.33 | 9/15/2003 | 8.67 | 7.72 |

The date of purchase or sale is the "contract" or "trade" date as distinguished from the "settlement" date.

For Class Members who held MSN securities at the beginning of the Class Period or made multiple purchases or sales during the Class Period, the first-in, first-out ("FIFO") method will be applied to such holdings, purchases and sales for purposes of calculating a claim. Under the FIFO method, sales of shares during the Class Period will be matched, in chronological order, first against shares held at the beginning of the Class Period. The remaining sales of shares during the Class Period will then be matched, in chronological order, against shares purchased during the Class Period.

A Class member will be eligible to receive a distribution from the Net Settlement Fund only if a Class member had a net loss, after all profits from transactions in MSN common stock during the Class Period are subtracted from all losses.

The payment you get will reflect your pro rata share of the Net Settlement Fund. Depending on the number of securities that participate in the settlement and when those securities were purchased and sold, the estimated average payment for Class Members will be approximately $0.45 for each security before deduction of Court-approved fees and expenses. The number of claimants who send in claims varies widely from case to case. If fewer than anticipated Class Members send in a claim form, you could get more money.

## HOW YOU GET A PAYMENT — SUBMITTING A CLAIM FORM

### 10. How Will I Get a Payment?

To qualify for payment, you must be an eligible Class Member and you must send in a claim form. A claim form is enclosed with this Notice. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than May 14, 2007.

### 11. When Will I Get My Payment?

The Court will hold a hearing on March 2, 2007, to decide whether to approve the settlement. If Judge Dimitrouleas approves the settlement, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps several years. Everyone who sends in a claim form will be informed of the determination with respect to their claim. Please be patient.

### 12. What Am I Giving Up to Get a Payment or Stay in the Settlement Class?

Unless you exclude yourself, you are staying in the Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against the Defendants about the same legal issues that were or could have been raised in this case. It also means that all of the Court's orders will apply to you and legally bind you and you will release your claims in this case against the Defendants. The terms of the release are included in the claim form that is enclosed.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue the Defendants on your own about the same legal issues that were or could have been raised in this case, then you must take steps to get out of the Class. This is called excluding yourself or is sometimes referred to as opting out of the Class.

### 13. How Do I Get Out of the Settlement Class?

To exclude yourself from the Class, you must send a letter by mail stating that you want to be excluded from *Joseph and Patricia Marrari v. Medical Staffing Network Holdings, Inc., et al.*, Case No. 04-80158-CIV-Dimitrouleas. You must include your name, address, telephone number, and your signature, and the number of MSN securities you purchased between April 18, 2002 and June 16, 2003, the number of securities sold during this time period, if any, and the dates of such purchases and sales. You must mail your exclusion request postmarked no later than February 16, 2007 to:

> Medical Staffing Network Holdings Securities Litigation
> Claims Administrator
> c/o RSM McGladrey, Inc.
> P.O. Box 1607
> Blue Bell, PA 19422

You cannot exclude yourself on the phone or by e-mail. If you ask to be excluded, you are not eligible to get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit.

### 14. If I Do Not Exclude Myself, Can I Sue the Defendants for the Same Thing Later?

No. Unless you exclude yourself, you give up any right to sue the Defendants for the legal issues that were or could have been raised in this litigation. If you have a pending lawsuit against any of the Defendants, speak to your lawyer in that case immediately. Remember, the exclusion deadline is February 16, 2007.

### 15. If I Exclude Myself, Can I Get Money from This Settlement?

No. If you exclude yourself, do not send in a claim form. But, you may sue, continue to sue, or be part of a different lawsuit against the Defendants.

## THE LAWYERS REPRESENTING YOU

### 16. Do I Have a Lawyer in This Case?

The Court appointed the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP to represent members of the Class. These lawyers are called Plaintiff's Lead Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How Will the Lawyers Be Paid?

Plaintiff's Lead Counsel will ask the Court for attorneys' fees of 30% of the Settlement Fund (an average of $0.136 per damaged share of common stock) and for reimbursement of their out-of-pocket expenses up to $250,000.00 ($0.023 per damaged share of common stock), which were advanced in connection with the Litigation plus interest on such amounts. Such sums as may be approved by the Court will be paid from the Settlement Fund. Class Members are not personally liable for any such fees or expenses.

The attorneys' fees and expenses requested will be the only payment to Plaintiff's Lead Counsel for their efforts in achieving this settlement and for their risk in undertaking this representation on a wholly contingent basis. To date, Plaintiff's Lead Counsel have not been paid for their services for conducting this Litigation on behalf of the Lead Plaintiff and the Settlement Class nor for their substantial out-of-pocket expenses. The fee requested will compensate Plaintiff's Lead Counsel for their work in achieving the Settlement Fund and is well within the range of fees awarded to class counsel under similar circumstances in other cases of this type. The Court may award less than this amount.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it, Plaintiff's Lead Counsel's request for attorneys' fees and reimbursement of expenses, and/or the Plan of Allocation.

### 18. How Do I Tell the Court that I Don't Like the Settlement, the Fee and Expense Request and/or the Plan of Allocation?

If you are a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to the settlement, the request for attorneys' fees and expenses and/or the Plan of Allocation in *Joseph and Patricia Marrari v. Medical*

*Staffing Network Holdings, Inc., et al.,* Case No. 04-80158-CIV-Dimitrouleas. Be sure to include your name, address, telephone number, your signature and the reasons you object to the settlement, as well as the number of MSN securities you purchased and sold between April 18, 2002 and June 16, 2003. Any objection to the settlement must be mailed or delivered such that it is received by each of the following no later than February 16, 2007:

*Court:*

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
299 East Broward Boulevard, Room 108
Ft. Lauderdale, FL 33301

*Plaintiff's Lead Counsel:*

Jack Reise
LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432

*Counsel for Defendants:*

Stanley H. Wakshlag
Harry R. Schafer
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, FL 33131

Stephen W. Greiner
Sameer Advani
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019

### 19. What's the Difference Between Objecting and Excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object *only if* you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 20. When and Where Will the Court Decide Whether to Approve the Settlement?

The Court will hold a fairness hearing at 10:30 a.m., on March 2, 2007, at the 299 East Broward Boulevard, Courtroom 205B, Ft. Lauderdale, Florida. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Dimitrouleas will listen to people who have asked to speak at the hearing. The Court will also consider how much to pay to Plaintiff's Lead Counsel. The Court may decide these issues at the hearing or take them under consideration. We do not know how long these decisions will take.

### 21. Do I have to Come to the Hearing?

No. Plaintiff's Lead Counsel will answer questions Judge Dimitrouleas may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you delivered your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 22. May I Speak at the Hearing?

You may ask the Court for permission to speak at the Settlement Fairness Hearing. To do so, you must send a letter saying that it is your intention to appear in *Joseph and Patricia Marrari v. Medical Staffing Network Holdings, Inc., et al.,* Case No. 04-80158-CIV-Dimitrouleas. Be sure to include your name, address, telephone number and your signature. You must include the number of MSN securities purchased between April 18, 2002 and June 16, 2003. Your notice of intention to appear must be received no later than February 16, 2007, by the Clerk of the Court, Plaintiff's Lead Counsel, and Defendants' Counsel, at the three addresses listed in question 18. You cannot speak at the hearing if you exclude yourself from the Class.

## IF YOU DO NOTHING

### 23. What Happens if I Do Nothing at All?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the same legal issues that were or could have been raised in this litigation.

## GETTING MORE INFORMATION

### 24. Are There More Details About the Settlement?

This Notice summarizes the proposed settlement. More details are in the Stipulation of Settlement dated as of December 12, 2006. You can get a copy of the Stipulation of Settlement by writing to Jack Reise, c/o Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 120 East Palmetto Park Road, Suite 500, Boca Raton, FL 33432 or from the Clerk's office at the United States District Court for the Southern District of Florida, 199 East Broward Boulevard, Room 108, Ft. Lauderdale, FL 33301 during regular business hours, or visit the website at www.claimsinformation.com/medicalstaffing.

### 25. How Do I Get More Information?

You can call the Claims Administrator at 800-222-2760 or write to Jack Reise at Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 120 East Palmetto Park Road, Suite 500, Boca Raton, FL 33432, or visit the website at www.claimsinformation.com/medicalstaffing.

### *DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE*

### SPECIAL NOTICE TO NOMINEES

If you hold any MSN securities purchased between April 18, 2002 and June 16, 2003, as nominee for a beneficial owner, then, within ten days after you receive this Notice, you must either: (1) send a copy of this Notice by first class mail to all such Persons; or (2) provide a list of the names and addresses of such Persons to the Claims Administrator:

> *Medical Staffing Network Holdings, Inc. Securities Litigation*
> Claims Administrator
> c/o RSM McGladrey, Inc.
> P.O. Box 1367
> Blue Bell, PA 19422

If you choose to mail the Notice and Proof of Claim yourself, you may obtain from the Claims Administrator (without cost to you) as many additional copies of these documents as you will need to complete the mailing.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding the Notice and which would not have been incurred but for the obligation to forward the Notice, upon submission of appropriate documentation to the Claims Administrator.

DATED: January 12, 2007

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## INSTRUCTIONS FOR COMPLETING SUBSTITUTE FORM W-9

### Purpose of Form

A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**Use Form W-9 only if you are a U.S. person** (including a resident alien), to give your correct TIN to the person requesting it (the requester), and, when applicable, to:

**1.** Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

**2.** Certify that you are not subject to backup withholding, or

**3.** Claim exemption from backup withholding if you are a U.S. exempt payee.

**If you are a foreign person, use the appropriate Form W-8. See Pub. 515,** Withholding of Tax on Nonresident Aliens and Foreign Corporations.

**Note:** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**What is backup withholding?** Persons making certain payments to you must withhold and pay to the IRS 28% of such payments under certain conditions. This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

If you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return, payments you receive will not be subject to backup withholding. **Payments you receive will be subject to backup withholding if:**

**1.** You do not furnish your TIN to the requester, or

**2.** You do not certify your TIN when required (see the Part III instructions on page 2 for details), or

**3.** The IRS tells the requester that you furnished an incorrect TIN, or

**4.** The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

**5.** You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the Part II instructions and the separate **Instructions for the Requester of Form W-9.**

### Penalties

**Failure to Furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

### Specific Instructions

**Name.** If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle the name of the person or entity whose number you enter in Part I of the form.

*Sole proprietor.* Enter your **Individual** name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

*Limited liability company (LLC).* If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations

section 301.7701-3, **enter the owner's name on the "Name" line.** Enter the LLC's name on the "Business name" line.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

*Other entities.* Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

### Part I — Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.**

If you are a **resident alien** and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see **How to get a TIN** below.

If you are a **sole proprietor** and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are an LLC that is **disregarded as an entity** separate from its owner (see *Limited liability company (LLC)* above), and are owned by an individual, enter your SSN (or "pre-LLC" EIN, if desired). If the owner of a disregarded LLC is a corporation, partnership, etc., enter the owner's EIN.

**Note:** *See the chart on this page for further clarification of name and TIN combinations.*

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get **Form SS-5,** Application for a Social Security Card, from your local Social Security Administration office. Get Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN or **Form SS-4,** Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS's Internet Web site at **www.irs.gov.**

If you do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** *Writing "Applied For" means that you have already applied for a TIN* **or** *that you intend to apply for one soon.*

### Part II — For U.S. Payees Exempt From Backup Withholding

Individuals (including sole proprietors) are **not** exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. For more information on exempt payees, see the separate Instructions for the Requester of Form W-9.

If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding. Enter your correct TIN in Part I, write "Exempt" in Part II, and sign and date the form.

If you are a nonresident alien or foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

### Part III — Certification

To establish the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required).

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you

have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified state tuition program payments, IRA or MSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

### Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to give your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

### What Name and Number To Give the Requester

| For this type of account: | Give the name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 5. Sole proprietorship | The owner[3] |

| For this type of account: | Give the name and EIN number of: |
|---|---|
| 6. Sole proprietorship | The owner[3] |
| 7. A valid trust, estate, or pension trust | Legal entity[4] |
| 8. Corporate | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.
[2] Circle the minor's name and furnish the minor's SSN.
[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).
[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** *If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.*

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-80158-CIV-DIMITROULEAS

JOSEPH AND PATRICIA MARRARI, on
behalf of themselves and all others
similarly situated,

       Plaintiffs,

vs.

MEDICAL STAFFING NETWORK
HOLDINGS, INC., *et al.,*

       Defendants.

X
:
:
:
:
:
:
:
:
:
:
:
:
:
:
X

# PROOF OF CLAIM AND RELEASE

## I. GENERAL INSTRUCTIONS

1. To recover as a member of the class based on your claims in the action entitled *Joseph and Patricia Marrari v. Medical Staffing Network Holdings, Inc., et al.,* Case No. 04-80158-CIV-Dimitrouleas, you must complete and, on page 15 hereof, sign this Proof of Claim and Release. If you fail to file a properly addressed (as set forth in paragraph 3 below) Proof of Claim and Release, your claim may be rejected and you may be precluded from any recovery from the Settlement Fund created in connection with the proposed settlement of the Litigation.

2. Submission of this Proof of Claim and Release, however, does not assure that you will share in the proceeds of settlement in the Litigation.

3. YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM AND RELEASE POSTMARKED ON OR BEFORE MAY 14, 2007 ADDRESSED AS FOLLOWS:

> *Medical Staffing Network Holdings Securities Litigation*
> Claims Administrator
> c/o RSM McGladrey, Inc.
> P.O. Box 1607
> Blue Bell, PA 19422

If you are NOT a Member of the Class, as defined in the Notice of Pendency and Proposed Settlement of Class Actions ("Notice"), DO NOT submit a Proof of Claim and Release form.

4. If you are a Member of the Class, you are bound by the terms of any judgment entered in the Litigation, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM AND RELEASE FORM.

## II. DEFINITIONS

1. "Class" means all Persons who purchased or otherwise acquired Medical Staffing Network Holdings, Inc. common stock between October 29, 2002 and June 16, 2003, inclusive, and were damaged thereby, and/or all persons who acquired Medical Staffing Network Holdings, Inc. common stock pursuant or traceable to its Registration Statement and Prospectus issued in connection with its April 18, 2002 initial public offering, and were damaged thereby. Excluded from the Class are Defendants and members of each individual defendants' immediate family, any entity in which a Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party. Also excluded from the Class are those Persons who submit a valid request to be excluded from the Class pursuant to the Notice of Pendency and Settlement of Class Action.

2. "Class Period" means the time period April 18, 2002 to and including June 16, 2003.

3. "Defendants" means Medical Staffing Network Holdings, Inc. ("MSN"), Robert J. Adamson, Kevin S. Little, Joel Ackerman, David J. Wenstrup, and Scott F. Hilinski.

## III. CLAIMANT IDENTIFICATION

1. If you purchased MSN publicly-traded securities and held the certificate(s) in your name, you are the beneficial purchaser as well as the record purchaser. If, however, the certificate(s) were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser and the third party is the record purchaser.

2. Use Part I of this form entitled "Claimant Identification" to identify each purchaser of record ("nominee"), if different from the beneficial purchaser of MSN securities. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER OR PURCHASERS, OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER OR PURCHASERS OF MSN COMMON STOCK UPON WHICH THIS CLAIM IS BASED.

3. All joint purchasers must sign this claim. Executors, administrators, guardians, conservators and trustees must complete and sign this claim on behalf of Persons represented by them and their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## IV. CLAIM FORM

1. Use Part II of this form entitled "Schedule of Transactions in MSN Common Stock" to supply all required details of your MSN securities purchases and sales during the Class Period. If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

2. On the schedules, provide all of the requested information with respect to *all* of your purchases and *all* of your sales of MSN securities which took place at any time between April 18, 2002 and June 16, 2003, whether such transactions resulted in a profit or a loss. Failure to report all such transactions may result in the rejection of your claim.

3. List each transaction in the Class Period separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day and year of each transaction you list.

4. Broker confirmations or other documentation of your transactions in MSN securities should be attached to your claim. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

5. The above requests are designed to provide the minimum amount of information necessary to process the most simple claims. The Claims Administrator may request additional information as required to efficiently and reliably calculate your losses. In some cases where the Claims Administrator cannot perform the calculation accurately or at a reasonable cost to the Class with the information provided, the Claims Administrator may condition acceptance of the claim upon the production of additional information and/or the hiring of an accounting expert at the Claimant's cost.

# PROOF OF CLAIM

Must be Postmarked No Later Than: May 14, 2007

Please Type or Print

## PART I: CLAIMANT IDENTIFICATION

Name(s) of
Beneficial Owner(s):

Street No.
and Street

City                                          State                Zip Code

Foreign Province                              Foreign Country

Taxpayer I.D. No.
or
Social Security No.

Claimant's Capacity:   ☐ Individual   ☐ Corporation   ☐ Agent   ☐ Partner

                       ☐ Successor   ☐ Other (specify) _____

Telephone Number:                          (work)

Telephone Number:                          (home)

Record Owner's Name (if different from Beneficial Owner listed above):

## PART II: SCHEDULE OF TRANSACTIONS IN MSN SECURITIES

A. Purchases of MSN securities (April 18, 2002 – June 16, 2003, inclusive):

| Line | Trade Date(s) of Purchase (List Chronologically) Month/Day/Year | Number of Shares Purchased | Purchase Price Per Share | Total Cost (including commissions, taxes & fees) |
|------|-----------------|-----------------|-----------------|-----------------|
| 1. | ☐☐–☐☐–☐☐ | ☐☐☐☐☐ | $☐☐☐☐☐.☐☐ | $☐☐☐☐☐☐.☐☐ |
| 2. | ☐☐–☐☐–☐☐ | ☐☐☐☐☐ | $☐☐☐☐☐.☐☐ | $☐☐☐☐☐☐.☐☐ |
| 3. | ☐☐–☐☐–☐☐ | ☐☐☐☐☐ | $☐☐☐☐☐.☐☐ | $☐☐☐☐☐☐.☐☐ |
| 4. | ☐☐–☐☐–☐☐ | ☐☐☐☐☐ | $☐☐☐☐☐.☐☐ | $☐☐☐☐☐☐.☐☐ |
| 5. | ☐☐–☐☐–☐☐ | ☐☐☐☐☐ | $☐☐☐☐☐.☐☐ | $☐☐☐☐☐☐.☐☐ |

IMPORTANT: Identify by line number all purchases in which you covered a "short sale": _____

B.  Sales of MSN securities (April 18, 2002 – February 20, 2004, inclusive):

| Line | Trade Date(s) of Sale (List Chronologically) Month/Day/Year | Number of Shares Sold | Sales Price Per Share | Net Amount Received (excluding commissions, taxes & fees) |
|---|---|---|---|---|
| 1. | ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐☐ | $☐☐☐☐☐ . ☐☐ | $☐☐☐☐☐☐ . ☐☐ |
| 2. | ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐☐ | $☐☐☐☐☐ . ☐☐ | $☐☐☐☐☐☐ . ☐☐ |
| 3. | ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐☐ | $☐☐☐☐☐ . ☐☐ | $☐☐☐☐☐☐ . ☐☐ |
| 4. | ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐☐ | $☐☐☐☐☐ . ☐☐ | $☐☐☐☐☐☐ . ☐☐ |
| 5. | ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐☐ | $☐☐☐☐☐ . ☐☐ | $☐☐☐☐☐☐ . ☐☐ |

C.  Number of shares of MSN securities held by you at the end of trading on February 20, 2004: _____

If you require additional space, attach extra schedules in the same format as above. Sign and print your name on each additional page.

YOU MUST READ AND SIGN THE RELEASE ON PAGE 15.

## V. SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I submit this Proof of Claim and Release under the terms of the Stipulation of Settlement dated as of December 12, 2006 ("Stipulation") described in the Notice. I also submit to the jurisdiction of the United States District Court for the Southern District of Florida, with respect to my claim as a Class Member (as defined herein and in the Notice) and for purposes of enforcing the release set forth herein. I further acknowledge that I am bound by and subject to the terms of any judgment that may be entered in the Litigation. I agree to furnish additional information to the Claims Administrator or Plaintiff's Lead Counsel to support this claim if required to do so. I have not submitted any other claim covering the purchases of MSN securities during the relevant time periods and know of no other Person having done so on my behalf.

## VI. RELEASE

1. I hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release, relinquish and discharge, all of the Released Claims against Defendants, and their respective past or present affiliates, subsidiaries, representatives, shareholders, creditors, partners, principals, officers, directors, employees, insurers, reinsurers, professional advisors, attorneys, agents, successors in interest, including but not limited to a trustee appointed in chapter 7 or 11 proceeding, a receiver, an assignee for the benefit of creditors, or any similar successors (other than securities brokers dealers who were not named as parties in the Complaint) (collectively, the "Released Parties").

2. "Released Claims" shall collectively mean any and all claims (including "Unknown Claims" as defined below), demands, rights, causes of action or liabilities, of every nature and description whatsoever, whether based in law or equity, on federal, state, local, statutory or common law, or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in any forum by the Class Members, or any of them, or the successors or assigns of any of them, whether directly, indirectly, derivatively, representatively or in any other capacity against any of the Released Parties, which arise out of, or relate in any way, directly or indirectly, to the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, referred to, or that could have been asserted in the Litigation, including, without limitation, claims for negligence, gross negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, fraud, negligent mis-representation, and breach of fiduciary duty, arising out of, based upon or related in any way to the purchase, acquisition, sale or disposition of MSN securities by any Class Member during the Class Period.

3. "Unknown Claims" means any Released Claims that any Lead Plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her, or it might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her, or its decision(s) not to object to this settlement. Upon the Effective Date, the Lead Plaintiff, Class Members, and all other Persons and entities whose claims are being released, shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the
time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Lead Plaintiff has, and each of the Class Members shall be deemed to have and – by operation of the Judgment – shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable and equivalent to California Civil Code § 1542. The Lead Plaintiff, and the Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff and each Class Member, upon the Effective Date,

14

shall be deemed to have, and – by operation of the Judgment – shall have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff acknowledges, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver of Unknown Claims was separately bargained for and a key element of the settlement of which this release is a part.

4. This release shall be of no force or effect unless and until the Court approves the Stipulation and it becomes effective on the Effective Date.

5. I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

6. I (We) hereby warrant and represent that I (we) have included information about all of my (our) transactions in MSN securities that occurred during the time period covered by this Proof of Claim, and the number of shares of MSN common stock held by me (us) at the opening of trading on April 18, 2002 and at the close of trading on June 16, 2003.

## SUBSTITUTE FORM W-9
## REQUEST FOR TAXPAYER IDENTIFICATION NUMBER

Enter your taxpayer identification number below. For most individuals, this is your Social Security Number. The United States Internal Revenue Service requires your taxpayer identification number. If you fail to furnish your correct taxpayer identification number, or your Social Security Number, 28% of your distributive share of the Net Settlement Fund will be withheld.

Social Security Number: ☐☐☐ - ☐☐ - ☐☐☐☐
(for individuals)

*OR*

Taxpayer Identification Number: ☐☐ - ☐☐☐☐☐☐☐
(for estates, trusts, corporations, etc.)

NOTE: A copy of the Instructions for completing Substitute Form W-9 and a description of payees subject to or exempt from the backup withholding requirements are included with this Claim Form.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.

Executed this _____ day of _____, in _____, _____.
(Month/Year)                         (City)                    (State/Country)

_____
(Sign your name here)

_____
(Type or print your name here)

_____
(Capacity of person(s) signing, *e.g.*,
Beneficial Purchaser, Executor or
Administrator)

## ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
## THANK YOU FOR YOUR PATIENCE.

Reminder Checklist:

1. Please sign the above release and declaration.

2. Remember to attach supporting documentation, if available.

3. Do not send original stock certificates.

4. Keep a copy of your claim form for your records.

5. If you desire an acknowledgment of receipt of your claim form, please send it Certified Mail, Return Receipt Requested.

6. If you move, please send us your new address.

*Medical Staffing Network Holdings, Inc. Securities Litigation*
Claims Administrator
c/o RSM McGladrey, Inc.
P.O. Box 1607
Blue Bell, PA 19422

**IMPORTANT LEGAL INFORMATION**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-80158-CIV-DIMITROULEAS

```
————————————————————————  X
                                      :
JOSEPH AND PATRICIA MARRARI, on       :
behalf of themselves and all others   :
similarly situated,                   :
                                      :
            Plaintiffs,               :
                                      :
    vs.                               :
                                      :
MEDICAL STAFFING NETWORK              :
HOLDINGS, INC., et al.,               :
                                      :
            Defendants.               :
————————————————————————  X
```

AFFIDAVIT OF PEARL PRESSMAN LIBERTY
IN CONNECTION WITH NOTICE BY MAILING

STATE OF PENNSYLVANIA          :      SS:
COUNTY OF PHILADELPHIA

       BE IT KNOWN that appeared before me James A. Lerner who being duly sworn deposes and says that:

       1.     He is Vice-President at Pearl Pressman Liberty, agents for RSM McGladrey, Inc. that was appointed to aid in giving notice to the Notice Class.

       2.     Pearl Pressman Liberty delivered on January 12, 2007 to the United States Post Office, at Philadelphia, Pennsylvania, a total of 647 pieces of First Class Mail addressed to persons who purchased securities of Medical Staffing Network Holdings, Inc. between April 18, 2002 and June 16, 2003, inclusive. Said pieces of mail consisted of a Notice of Pendency and Proposed Settlement of Class Action.

       3.     These mailings were requested and authorized by RSM McGladrey, Inc.

SWORN TO AND SUBSCRIBED TO
before me this   2-5-th   day of
  January  , 2007.

_____
NOTARY PUBLIC

James A. Lerner

```
┌─────────────────────────────────────┐
│           NOTARIAL SEAL              │
│   Michael Rosen, Notary Public       │
│ City of Phila., Philadelphia County  │
│ My commission expires March 24, 2007 │
└─────────────────────────────────────┘
```

**SK ADVERTISING LLC**
**1204 Landmark Road**
**Yardley, PA 19067**
**(215) 321-7331 • FAX (215) 321-7127**
**E-mail: SKAdvertising@aol.com**

## FOR IMMEDIATE RELEASE

TO:               **PR NEWSWIRE  - US1 NEWSLINE**

TO BE RELEASED:  January 19, 2007

FROM:           Alison Kauker

Settlement Hearing in Medical Staffing Network Holdings, Inc., *et al.*

Class Action to be Held on March 2, 2007

BOCA RATON, FL – January 19, 2007 – Counsel for Plaintiffs in the Medical

Staffing Network Holdings, Inc., *et al.* (NYSE: MRN) class action suit announced the

following:

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80158-CIV-DIMITROULEAS

JOSEPH AND PATRICIA MARRARI, on behalf of themselves and all other similarly

situated,

Plaintiffs,

vs.

MEDICAL STAFFING NETWORK HOLDINGS, INC., *et al.,*

Defendants.

PR NEWSWIRE – Medical Staffing Network Holdings, Inc./2

## SUMMARY NOTICE

TO:   ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED
MEDICAL STAFFING NETWORK HOLDINGS, INC. COMMON STOCK
BETWEEN OCTOBER 29, 2002 AND JUNE 16, 2003, INCLUSIVE, AND
WERE DAMAGED THEREBY, AND/OR ALL PERSONS WHO ACQUIRED
MEDICAL STAFFING NETWORK HOLDINGS, INC. COMMON STOCK
PURSUANT OR TRACEABLE TO ITS REGISTRATION STATEMENT
AND PROSPECTUS ISSUED IN CONNECTION WITH ITS APRIL 18, 2002
INITIAL PUBLIC OFFERING, AND WERE DAMAGED THEREBY (THE
"CLASS").

YOU ARE HEREBY NOTIFIED, that the above-captioned action has been
certified as a class action and that a settlement for $5,000,000.00 in cash has been
proposed. A hearing will be held before the Honorable William P. Dimitrouleas, United
States District Court, 299 East Broward Boulevard, Courtroom 205B, Ft. Lauderdale, FL
33301 at 10:30 a.m., on March 2, 2007 (the "Settlement Fairness Hearing"), to determine
whether the proposed settlement of this class action should be approved by the Court as
fair, reasonable, and adequate, to determine whether the proposed plan to distribute the
settlement proceeds is fair, reasonable and adequate, to consider the application of Lead

more.......

PR NEWSWIRE – Medical Staffing Network Holdings, Inc./3

Plaintiff's Counsel for attorneys' fees and reimbursement of expenses and Lead Plaintiff's
application for an expense award, and to determine whether to enter the proposed Bar
Order.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR
RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN
THE SETTLEMENT FUND. If you have not yet received the full printed Notice of
Pendency and Settlement of Class Action and a Proof of Claim form, you may obtain
copies of these documents by calling or writing to the Claims Administrator at: Medical
Staffing Network Holdings, Inc. Securities Litigation, Claims Administrator, c/o RSM
McGladrey, Inc., P.O. Box 1607, Blue Bell, PA 19422, (800) 222-2760.

You may also download a claim form from www.claimsinformation.com/medicalstaffing.

To participate in the Settlement, you must submit a Proof of Claim to the Claims
Administrator no later than May 14, 2007. If you are a Class Member and do not exclude
yourself from the Class, you will be bound by the Order and Final Judgment of the Court. To
exclude yourself from the Class, you must submit a request for exclusion postmarked no later
than February 16, 2007. If you are a Class Member and do not submit a proper Proof of Claim
or elect to exclude yourself from the Class, you will not share in the Settlement but you
nevertheless will be bound by the Order and Final Judgment of the Court.

more......

PR NEWSWIRE – Medical Staffing Network Holdings/4

Any objection to the settlement must be filed with the Court at the address below and served by hand or first class mail on the attorneys listed below on or before February 16, 2007:

*Court:* CLERK OF THE COURT, UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA, 299 East Broward Boulevard, Room 108, Ft. Lauderdale, FL 33602;

*Plaintiff's Lead Counsel:* Jack Reise , LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP, 120 East Palmetto Park Road, Suite 500, Boca Raton, FL 33432;

*Counsel for Defendants:* Stanley H. Wakshlag, Harry R. Schafer, KENNY NACHWALTER, P.A., 201 South Biscayne Boulevard, Suite 1100, Miami, FL 33131; and Stephen W. Greiner, Sameer Advani, WILLKIE FARR & GALLAGHER LLP, 787 Seventh Avenue, New York, NY 10019.

Further information may be obtained by directing your inquiry to the Claims Administrator at the same address noted above.

By Order of the Court

# # #

MEDIA CONTACT ONLY: Jack Reise, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, (561) 750-3000.

**UNITED STATES DISTRICT COURT - SOUTHERN DISTRICT OF FLORIDA**
Case No. 04-80158-CIV-DIMITROULEAS

JOSEPH AND PATRICIA MARRARI, on behalf of themselves and all others similarly situated,
Plaintiffs,

vs.

MEDICAL STAFFING NETWORK HOLDINGS, INC., *et al.*,
Defendants.

## SUMMARY NOTICE

TO: ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED MEDICAL STAFFING NETWORK HOLDINGS, INC. COMMON STOCK BETWEEN OCTOBER 29, 2002 AND JUNE 16, 2003, INCLUSIVE, AND WERE DAMAGED THEREBY, AND/OR ALL PERSONS WHO ACQUIRED MEDICAL STAFFING NETWORK HOLDINGS, INC. COMMON STOCK PURSUANT OR TRACEABLE TO ITS REGISTRATION STATEMENT AND PROSPECTUS ISSUED IN CONNECTION WITH ITS APRIL 18, 2002 INITIAL PUBLIC OFFERING, AND WERE DAMAGED THEREBY (THE "CLASS").

YOU ARE HEREBY NOTIFIED, that the above-captioned action has been certified as a class action and that a settlement for $5,000,000.00 in cash has been proposed. A hearing will be held before the Honorable William P. Dimitrouleas, United States District Court, 299 East Broward Boulevard, Courtroom 205B, Ft. Lauderdale, FL 33301 at 10:30 a.m., on March 2, 2007 (the "Settlement Fairness Hearing"), to determine whether the proposed settlement of this class action should be approved by the Court as fair, reasonable, and adequate, to determine whether the proposed plan to distribute the settlement proceeds is fair, reasonable and adequate, to consider the application of Lead Plaintiff's Counsel for attorneys' fees and reimbursement of expenses and Lead Plaintiff's application for an expense award, and to determine whether to enter the proposed Bar Order.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND. If you have not yet received the full printed Notice of Pendency and Settlement of Class Action and a Proof of Claim form, you may obtain copies of these documents by calling or writing to the Claims Administrator at: Medical Staffing Network Holdings, Inc. Securities Litigation, Claims Administrator, c/o RSM McGladrey, Inc., P.O. Box 1607, Blue Bell, PA 19422, (800) 222-2760.

You may also download a claim form from www.claimsinformation.com/medicalstaffing.

To participate in the Settlement, you must submit a Proof of Claim to the Claims Administrator no later than May 14, 2007. If you are a Class Member and do not exclude yourself from the Class, you will be bound by the Order and Final Judgment of the Court. To exclude yourself from the Class, you must submit a request for exclusion postmarked no later than February 16, 2007. If you are a Class Member and do not submit a proper Proof of Claim or elect to exclude yourself from the Class, you will not share in the Settlement but you nevertheless will be bound by the Order and Final Judgment of the Court.

Any objection to the settlement must be filed with the Court at the address below and served by hand or first class mail on the attorneys listed below on or before February 16, 2007:

*Court:*
CLERK OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
299 East Broward Boulevard, Room 108
Ft. Lauderdale, FL 33602

*Plaintiff's Lead Counsel:*
Jack Reise
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432

*Counsel for Defendants:*
Stanley H. Wakshlag
Harry R. Schafer
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, FL 33131
-and-
Stephen W. Greiner
Sameer Advani
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019

Further information may be obtained by directing your inquiry to the Claims Administrator at the same address noted above.

By Order of the Court

## Investor's Business Daily

(Legal Notices - 7 point)

1/10/07

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-80158-Civ-Dimitrouleas/Torres

JOSEPH AND PATRICIA MARRARI, On          CLASS ACTION
Behalf of Themselves and All Others Similarly
Situated,

               Plaintiffs,

   vs.

MEDICAL STAFFING NETWORK
HOLDINGS, INC., et al.,

               Defendants.

_____/

**DECLARATION OF STEPHEN R. ASTLEY IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

I, Stephen R. Astley, do declare:

1.     I am an associate with the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Court-appointed Lead Counsel in the above-titled action.

2.     I respectfully submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in this action, as well as the reimbursement of expenses reasonably incurred by my firm in connection with this litigation. I have personal knowledge of the matters referred to herein.

3.     My firm is the Court-appointed Lead Counsel. As Lead Counsel, the attorneys and paralegals of my firm were involved in all aspects of the prosecution of this action from its inception.

4.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and paralegal of my firm who performed work in this litigation.  The lodestar calculation is based on my firm's current billing rates.  For attorneys and paralegals who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such attorneys and paralegals in his or her final year of employment by my firm.  This schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available for review at the request of the Court.  Time expended in preparing this application for fees and reimbursement of expenses has not been included in this schedule.

5.      The hourly rates for the attorneys and paralegals at my firm included in Exhibit 1 are the same as the regular current rates charged or their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigations.

6.      As reflected in Exhibit 1, the total number of hours expended on this litigation by my firm in connection with the prosecution of this litigation is 2,602.75 hours.  The total lodestar for my firm is $1,046,811.25.

7.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.      Attached hereto as Exhibit 2 is a detailed schedule of the unreimbursed expenses incurred by my firm in connection with the prosecution of this case.  As detailed in Exhibit 2, my firm has incurred a total of $273,974.32 in unreimbursed expenses in connection with the prosecution of this litigation.

9.      The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source

2

materials and are an accurate record of the expenses incurred. These records are available for review
at the Court's request.

I declare, under penalty of perjury, that the foregoing is true and correct.

February 23, 2007

STEPHEN R. ASTLEY

G:\jreise\Medical Staffing\DEC Astley MOT Fees and Expenses.doc

3

# EXHIBIT 1

Medical Staffing
## LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS
## LODESTAR

Inception - February 22, 2007

| NAME AND STATUS | HOURLY RATE | HOURS | LODESTAR |
|---|---|---|---|
| Paul J. Geller (P) | $650.00 | 45.50 | $29,575.00 |
| Samuel H. Rudman (P) | $575.00 | 2.25 | $1,293.75 |
| David Rosenfeld (P) | $520.00 | 0.75 | $390.00 |
| Shawn Williams (P) | $515.00 | 7.00 | $3,605.00 |
| Jack Reise (P) | $550.00 | 372.00 | $204,600.00 |
| Sandy Svetcov (P) | $700.00 | 4.50 | $3,150.00 |
| Randall Steinmeyer (P) | $510.00 | 2.50 | $1,275.00 |
| David J. George (P) | $575.00 | 8.25 | $4,743.75 |
| Doug Wilens (P) | $515.00 | 28.25 | $14,548.75 |
| Elizabeth Abrams (A) | $325.00 | 309.25 | $100,506.25 |
| Scott Adkins (A) | $320.00 | 126.25 | $40,400.00 |
| Mario Alba (A) | $420.00 | 6.75 | $2,835.00 |
| Stephen Astley (A) | $505.00 | 404.50 | $204,272.50 |
| Stuart A. Davidson (A) | $510.00 | 1.25 | $637.50 |
| Maris DeMato (A) | $360.00 | 188.25 | $67,770.00 |
| Michael Greenwald (A) | $360.00 | 88.50 | $31,860.00 |
| Steven Holzman (A) | $295.00 | 85.50 | $25,222.50 |
| Sylvia Keller (A) | $500.00 | 0.25 | $125.00 |
| Robert J. Robbins (A) | $420.00 | 244.00 | $102,480.00 |
| Manuel Rodriguez (A) | $315.00 | 41.00 | $12,915.00 |
| Alina Welt (TA) | $390.00 | 223.00 | $86,970.00 |
| Kristen Badgley (PL) | $250.00 | 4.00 | $1,000.00 |
| Kiyoko Freund (PL) | $250.00 | 1.50 | $375.00 |
| Angela Hill (PL) | $250.00 | 8.50 | $2,125.00 |
| Jeffrey McCabe (PL) | $215.00 | 12.00 | $2,580.00 |
| Lee Nielsen (PL) | $270.00 | 4.00 | $1,080.00 |
| Sue Null (PL) | $125.00 | 0.25 | $31.25 |
| Patricia Puerto (PL) | $270.00 | 139.75 | $37,732.50 |
| Christine Stella (PL) | $270.00 | 2.25 | $607.50 |
| Susan Williams (PL) | $270.00 | 2.00 | $540.00 |
| Steven Aronica (For. Acct.) | $450.00 | 37.00 | $16,650.00 |
| Kelly Brandon (Invest.) | $360.00 | 2.00 | $720.00 |
| Michelle Tomalonis (Invest.) | $300.00 | 1.50 | $450.00 |
| Rebecca Duckor (SR) | $190.00 | 19.50 | $3,705.00 |
| Ron Gosling (SR) | $240.00 | 1.00 | $240.00 |
| Rick Nelson (SR) | $240.00 | 39.00 | $9,360.00 |
| Aubrena O'Neal (SR) | $240.00 | 6.00 | $1,440.00 |
| Michael Pham (SR) | $190.00 | 3.00 | $570.00 |
| Alissa Policarpio (SR) | $240.00 | 4.25 | $1,020.00 |
| Raul Souza (SR) | $190.00 | 72.00 | $13,680.00 |
| Greg Wood (SR) | $240.00 | 7.50 | $1,800.00 |
| Ed Davila (Librarian) | $180.00 | 0.25 | $45.00 |
| Ryan Kadota (ES) | $240.00 | 4.50 | $1,080.00 |
| Scott Roelen (EA) | $240.00 | 6.00 | $1,440.00 |
| Frank Villalovas (EA) | $350.00 | 1.50 | $525.00 |
| Kathleen Barber (LC) | $260.00 | 34.00 | $8,840.00 |
| **TOTAL** | | **2602.75** | **$1,046,811.25** |

# EXHIBIT 2

Medical Staffing
## LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
## EXPENSE REPORT
Inception - February 22, 2007

| Expenses | Total Expenses To Date |
|---|---|
| Photocopying | $67,308.94 |
| Telephone and Telecopier | $117.32 |
| Messenger/Courier/Overnight | $1,339.09 |
| Postage | $105.64 |
| Computer Research/Bloomberg | $8,819.72 |
| Filing/Legal/Witness Fees | $1,579.00 |
| Depositions/Transcript Fees | $21,358.17 |
| Service of Process | $390.00 |
| Investigator | $86,955.49 |
| Secretarial Overtime | $1,733.96 |
| Consultants | $66,341.83 |
| Hotels, Meals, Transportation | $10,300.70 |
| Office Supplies | $8.61 |
| Shareholders Notice | $7,615.85 |
| **TOTAL** | **$273,974.32** |

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80158-CIV-DIMITROULEAS/TORRES

JOSEPH AND PATRICIA MARRARI, On )
Behalf of Themselves and All Others Similarly )
Situated, )          CLASS ACTION
                                    )
                  Plaintiffs,       )
                                    )
      vs.                           )
                                    )
MEDICAL STAFFING NETWORK            )
HOLDINGS, INC., et al.,             )
                                    )
                  Defendants.       )
                                    )
_____ )

## DECLARATION OF LEAD PLAINTIFF THOMAS GREENE

I, THOMAS GREENE, declare under penalty of perjury as follows:

1.      I am a Lead Plaintiff and Class Representative in the above action. I am submitting this Declaration in support of my motion for a compensatory award in connection with services rendered while representing the class.

2.      As a Lead Plaintiff and Class Representative, I have been actively involved in the prosecution of this action. My participation has included regularly communicating with my attorneys to discuss the case, either in person or by telephone. I have diligently reviewed pleadings and other documents provided to me by my attorneys over the course of the past three years. In addition, I have assisted in responding to various requests for documents and other information sought by the defendants in this case. My efforts included a detailed search of my personal files for any materials relating to this case.

3.    I prepared for and provided deposition testimony in this litigation in connection with the class certification proceedings. The deposition required me to take time off from work for deposition preparation and testimony, which took place on March 16, 2006, in Boca Raton, Florida.

4.    I also attended the hearing on the motion for class certification, which took place on May 12, 2006 in Miami, Florida, and met with my attorneys beforehand.

5.    I went over the provisions of the proposed settlement agreement with counsel and provided my consent to the settlement.

6.    During the time that I worked on this litigation, I worked as a business owner. My business, Custom Rod & Reel, is a very successful custom rod and fish tackle business located in Lighthouse Point, Florida. As the owner of Custom Rod & Reel, I am responsible for all aspects of the operation of the business, including management, overseeing sales, and providing customer service.

7.    With all my efforts on this case, I expended a total of approximately 56 hours, precluding me from working on other matters.

8.    Although I do not have a customary hourly rate, in connection with my business and my expertise in the fishing industry, I have been retained as an expert witness numerous times and have been compensated for such services at $200-250 per hour.

DATED: February _10_, 2007.

_____
THOMAS GREENE

2